**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
U.S. COMMODITY FUTURES TRADING
COMMISSION,

                     Plaintiff,

           -against-

DANIEL WINSTON LAMARCO, GDLOGIX
INC.,

                    Defendants.
---------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
2:17-cv-04087 (ADS) (AKT)

**APPEARANCES:**

**U.S. Commodity Futures Trading Commission**
*Corporation Counsel for the Plaintiff*
1155 21st Street, N.W.
Washington, DC 20581
     By:    Danielle E. Karst, Esq.,
              Michael R. Berlowitz, Esq., Of Counsel

**Daniel Winston Lamarco**
*Pro se Defendant*


**NO APPEARANCES:**

**GDLogix Inc.**
*Defendant*

**SPATT, District Judge**:

       On July 10, 2017, the Plaintiff the United States Commodity Futures Trading Commission (the "Plaintiff" or the "CFTC") commenced this action against the Defendants Daniel Winston Lamarco ("Lamarco") and GDLogix Inc. ("GDLogix") (collectively, the "Defendants") for alleged violations of the Commodity Exchange Act (the "Act").

Presently before the Court is a motion by Lamarco to stay the case pending an appeal of his criminal conviction, as well as a motion requesting that the Court vacate the certificate of default against GDLogix. For the following reasons, Lamarco's motion to stay the case pending his appeal is denied, and his motion to vacate the certificate of default against GDLogix is denied because he does not have standing to move to vacate the default. However, in the interests of justice, the Court *sua sponte* vacates the certificate of default against GDLogix for the purpose of attempting to secure counsel to discuss settlement.

## I. BACKGROUND

### A. The Relevant Procedural History

On August 19, 2016, Lamarco plead guilty in a related criminal case under docket number 2:16-cr-0043-ADS-AKT-1 to one count of wire fraud, 18 U.S.C. §§ 1343, 2, and 3551 *et seq.*, and one count of commodities fraud, 7 U.S.C. §§ 6o(1) and 13(a)(2); 18 U.S.C. §§ 2 and 3551 *et seq.*. He was sentenced by this Court on February 3, 2017 to forty-two months imprisonment to be followed by three years supervised release. Lamarco began serving his criminal sentence in May 2017.

On March 3, 2017, attorney Robert J. Del Col ("Del Col") entered an appearance in the criminal action on behalf of LaMarco. Del Col apparently accepted the representation *pro bono*. Prior to his sentence, Lamarco was represented by retained counsel. That same day, Lamarco filed a notice of appeal as to his criminal conviction. On April 28, 2017, Lamarco filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255 ("§ 2255") based on an alleged ineffective assistance of counsel. To date, the Court has not yet ruled on Lamarco's § 2255 motion.

On July 10, 2017, the CFTC commenced this action by filing a complaint. The complaint seeks injunctive relief, civil penalties, and ancillary equitable relief. The CFTC alleges that the

2

Defendants committed fraud, and failed to register as a commodity pool operator or as an associated person of a commodity pool operator in violation of the Act. The allegations are largely based on the acts for which Lamarco plead guilty in the criminal docket.

In a July 25, 2017 letter to United States Magistrate Judge A. Kathleen Tomlinson ("Judge Tomlinson"), the CFTC advised Judge Tomlinson that they had attempted on numerous occasions to discuss a resolution of the civil matter with Del Col, but that Del Col had never responded to any of the Plaintiff's communications. The CFTC represented to Judge Tomlinson that they initiated this action as a result.

On August 2, 2017, the Defendants were served with the summons and complaint.

On August 4, 2017, Judge Tomlinson issued an order stating that:

> Since the CFTC has stated that it would like to discuss a possible negotiated resolution, the Court will attempt to appoint an attorney from the EDNY Pro Bono Panel for a limited appearance solely to represent Defendant LaMarco for purposes of settlement negotiations. If the case is not resolved through those negotiations, then the Court will address further contact between plaintiff and the pro se defendant for purposes of moving discovery forward. It will take a short time for the Court to work on the appointment of counsel issue. While the Court is doing so, all other aspects of this case are held in abeyance until the further Order of the Court.

(Order dated August 7, 2017, ECF No. 18).

On September 8, 2017, Judge Tomlinson issued an electronic order adjourning the initial conference without date in light of the fact that the Court's staff was attempting to secure counsel for the Defendants.

On September 11, 2017, Judge Tomlinson appointed Del Col to represent Lamarco in the civil action for purposes of settlement negotiations, and Del Col entered a notice of appearance the next day, September 12, 2017. Judge Tomlinson afforded the parties sixty (60) days to negotiate a possible resolution, and directed them to file a joint status report by November 15, 2017.

The CFTC sent a status report on November 13, 2017 to Judge Tomlinson, advising the Court that the Plaintiff had called Del Col, and sent letters and emails to him, but that Del Col had never responded to any of the CFTC's communications. As a result, the Plaintiff represented that "there has been no initiation of settlement negotiations with the Defendant as ordered by the Court despite the CFTC's good faith efforts." (Letter filed November 13, 2017, ECF No. 22).

On November 28, 2017, Judge Tomlinson issued an order directing Del Col to inform the Court by December 5, 2017 as to whether he was in a position to comply with the Court's appointment in light of the fact that he had failed to communicate with either the CFTC or the EDNY Pro Se Office. The Court noted that the Pro Se office had called Del Col several times and sent him an email, but that Del Col had never responded to these communications.

Del Col responded to the Court's order on December 5, 2017, wherein he represented that he had finally spoken with the CFTC on or about November 28, 2017; that they had begun settlement negotiations; and that he was planning to visit Lamarco at the Metropolitan Correctional Center (the "MCC"). The Court advised Del Col to remain in contact with the Court, as well as the Pro Se office, and directed the parties to provide a status report by January 15, 2018. (Order dated December 6, 2017, ECF No. 25).

On January 10, 2018, the CFTC sent a letter to Judge Tomlinson stating that although the CFTC and Del Col engaged in one telephone conversation on November 14, 2017, Del Col had failed to respond to a series of phone calls and emails since that date. As a result, the CFTC represented that no progress had been made towards a resolution, and asked that it be permitted to file a request for a certificate of default against the Defendants. In light of this, Judge Tomlinson ordered Del Col to respond to the CFTC's assertions by January 12, 2018.

In a letter to Judge Tomlinson dated January 12, 2018, Del Col represented that he "had repeated conversations with [his] client regarding an overall settlement and ha[d] made substantial progress," (Letter dated January 12, 2018, ECF No. 28), and that the parties had engaged in a conference call that day. He said that he expected to speak with his client again in the coming days, and had set up another conference call with the CFTC.

Judge Tomlinson directed the parties to appear for a conference on January 22, 2018. Del Col was directed to appear in person, and counsel for the CFTC was permitted to appear by telephone.

During the January 22, 2018 conference, Del Col represented to the Court that he was going to visit Lamarco by the end of the week. The Court directed Del Col to advise the Court of the results of his visit by February 1, 2018, and scheduled a conference for March 5, 2018. Judge Tomlinson advised the parties that she would conduct a settlement conference wherein Lamarco could attend in person or by phone.

The Court's February 1, 2018 deadline passed without any update from Del Col. On February 21, 2018, the CFTC advised Judge Tomlinson by letter that Del Col had not communicated with the CFTC since the previous conference, and that Del Col had not responded to a voicemail.

On February 28, 2018, Del Col stated that "[f]or obvious reasons, the mere chance of success in the habeas corpus proceeding [in Lamarco's criminal case] prohibits me from reaching a settlement that includes any admissions that would prejudice my client in the event his conviction is vacated." (Letter dated February 28, 2018, ECF No. 32). Del Col requested that the civil case be stayed pending the Court's decision on Lamarco's § 2255 application in his criminal matter.

5

On March 1, 2018, Judge Tomlinson relieved Del Col as counsel for Lamarco in light of the fact that he was appointed for the purposes of reaching a settlement, but had represented that he could not reach such settlement. The Court directed Lamarco to advise the Court in writing by April 6, 2018 as to whether he would be retaining counsel or proceeding *pro se*. The Court advised Lamarco that GDLogix, as a corporation, could not appear *pro se*, and ran the risk of defaulting if Lamarco was unable to retain counsel for it.

On April 4, 2018, Lamarco advised the Court that he would be proceeding *pro se*. Relevant here, he also stated that he did not have any knowledge of any negotiations between Del Col and the CFTC. According to the letter, Lamarco apparently had three (3) fifteen minutes phone calls with Del Col regarding the civil case over the course of six months, and Del Col had never visited him at the MCC. That same day, Lamarco also filed a motion to stay the civil case pending the appeal of his criminal conviction. The CFTC responded to Lamarco's motion on April 12, 2018.

On April 11, 2018, the Second Circuit granted Lamarco's motion to hold his appeal in abeyance pending the outcome of his § 2255 motion at the district court level.

On April 19, 2018, the Clerk of the Court entered a certificate of default against GDLogix.

On April 25, 2018, Lamarco wrote a letter to the Court requesting, *inter alia*, that default judgment not be entered against GDLogix. On April 30, 2018, the CFTC filed a motion to strike Lamarco's letter motion based on the fact that Lamarco cannot represent GDLogix.

## II. DISCUSSION

### A. As to Lamarco's Motion to Stay the Instant Matter Pending His Criminal Appeal

While Lamarco asks this Court to stay the matter pending the outcome of his criminal appeal, the majority of his arguments revolve around the fact that he cannot effectively represent himself at this time. Lamarco notes that he needs access to his laptop, home computer, documents,

etc., and that without access to these items and materials, he would suffer prejudice. He notes that the MCC has outdated legal materials that are only available to prisoners at certain times, and quite often lockdowns prevent prisoners from accessing the library for days or weeks. Lamarco also claims that discovery in the civil matter would prejudice his criminal case, and that there is a potential for double jeopardy. For its part, the Plaintiff argues that Lamarco has failed to establish that a stay in this case is required, and that the two cases cited by Lamarco have no bearing on the instant motion. The Court finds that a stay of this matter pending Lamarco's criminal appeal is not warranted.

It is well established that district courts have discretionary authority to stay a case when the interests of justice so require. *See United States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S. Ct. 763, 770 n.27, 25 L. Ed. 2d 1, 12, n.27 (1970); *Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir. 1986) (citing *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C. Cir. 1980) (*en banc* ), *cert. denied,* 449 U.S. 993, 101 S. Ct. 529, 66 L. Ed. 2d 289 (1980)). Courts may decide to stay civil proceedings, postpone civil discovery, or impose protective orders. *Dresser,* 628 F.2d at 1375. A stay of a civil case is an extraordinary remedy. *Jackson v. Johnson,* 985 F. Supp. 422, 424 (S.D.N.Y. 1997).

In determining whether to stay a civil proceeding pending the outcome of a related criminal case, courts in the Second Circuit consider the following factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012) (quoting *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.,* 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

In general, "'absent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim.'" *Transatlantic Reinsurance Co. v. Salvatore Ditrapani, Int'l,* No. 90 CV 3884, 1991 WL 12135, at *2, 1991 U.S. Dist. LEXIS 872, at *5 (S.D.N.Y. Jan. 28, 1991) (quoting *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.,* 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980)).

Neither party addressed the factors set forth in *Louis Vuitton*. As to the first factor, there is no question that the criminal and civil cases have overlapping issues.

As to the second factor, courts have found that civil cases should not be stayed while a criminal appeal is pending. *See Gen. Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1214 (8th Cir. 1973) (finding that the trial court did not err in refusing to stay the civil proceedings while the criminal appeal was pending); *Jenkins v. Miller*, No. 2:12-CV-184, 2017 WL 1052582, at *4 (D. Vt. Mar. 20, 2017) ("[C]ourts evaluating a case after a defendant has been convicted have typically given less weight to the burden to a defendant of proceeding with a civil case than they would before the trial."); *United States v. Davis*, No. 15-24485-CIV, 2016 WL 8809717, at *1 (S.D. Fla. May 4, 2016) ("In addition, Davis has already been tried, convicted, and sentenced, and courts generally disfavor imposing a stay in parallel proceedings based on a pending criminal appeal." (internal citations omitted)); *SEC v. Braslau*, CV 14-01290-ODW, 2015 WL 9591482, at *2 (C.D. Cal. Dec. 29, 2015) ("Where the trial in the parallel criminal proceeding has concluded, and a conviction is challenged on appeal, courts are generally more reluctant to stay parallel civil

proceedings."); *Chartis Prop. Cas. Co. v. Huguely*, No. CIV.A. DKC 13-1479, 2013 WL 5634266, at *3 (D. Md. Oct. 15, 2013) ("Courts that have evaluated the question of whether to stay a civil case while the related criminal case is on appeal tend against granting a stay because the defendant has been tried, convicted, and sentenced and there is only a mere possibility that a successful appeal might lead to a new trial that could require invocation of defendant's Fifth Amendment rights."); *Bd. of Cty. Cmm'rs of Cty. Of Adams v. Asay*, 2012 WL 6107949, at *2 (D. Colo. Dec. 10, 2012) ("Courts in the Tenth Circuit have not yet addressed the issue of whether to grant a request for a stay by a civil defendant also appealing a criminal sentence in parallel proceedings. However, the only cases directly on point cited by the parties have found that a stay should not be imposed based on a pending criminal appeal. The Court has found no cases holding the opposite." (internal citations omitted)); *In re Terrorist Attacks on Sept. 11, 2011,* No. 03 MDL 1570, 2011 WL 5913526, at *4–5 (S.D.N.Y. Nov. 22, 2011) (stating that the defendant did not cite any cases and the court could not find any "in which a stay of civil discovery was granted after the related criminal trial had concluded, based on the mere possibility that a successful appeal might lead to a new trial"); *Sparkman v. Thompson,* No. 08–01–KKC, 2009 WL 1941907, at *2 (E.D. Ky. July 6, 2009) ("[T]he status of [a] [d]efendant's criminal case weighs strongly against granting a stay [when the d]efendant has already been tried, convicted, and sentenced."); *United States v. Ianniello*, No. 86 CIV. 1552-CSH, 1986 WL 7006, at *4 (S.D.N.Y. June 17, 1986) (denying civil defendants' motion to stay during the appeal of their parallel criminal proceeding). Nor does a pending § 2255 motion weigh in favor of granting a stay. *See United States v. Certain Real Prop. & Premises Known as 63-29 Trimble Rd., Woodside, N.Y.*, 812 F. Supp. 332, 334 (E.D.N.Y. 1992) ("Nor will the pendency of her habeas petition serve as a basis for a stay . . . .").

As in all cases, the Plaintiff, the Court, and the public have an interest in the expeditious resolution of its case. *See In re Bolin & Co., LLC,* No. 3:08CV1793 (SRU), 2012 WL 3730410, at *4 (D. Conn. June 27, 2012) ("[T]he interests of the court, and the public, are best served by the expeditious resolution of this case."); *see also U.S. Commodity Futures Trading Comm'n v. A.S. Templeton Grp., Inc.,* 297 F. Supp. 2d 531, 535–36 (E.D.N.Y. 2003) ("[C]onvenience of the courts is best served when motions to stay proceedings are discouraged. The courts must be mindful that 'a policy of issuing stays solely because a litigant is defending simultaneous lawsuits would threaten to become a constant source of delay and an interference with judicial administration.'" (quoting *United States v. Private Sanitation Industry Association*, 811 F. Supp. 802, 808 (E.D.N.Y. 1992))).

As to the Defendant, he has outlined many reasons why he feels that he is burdened as a *pro se* prisoner litigant. However, the fact that Lamarco plead guilty and is now serving his sentence is not the type of prejudice typically considered by the courts. Furthermore, this is not undue prejudice, as Lamarco has plead guilty, and must now defend himself for civil violations. Courts typically consider the prejudice to the defendant in light of constitutional implications. *See, e.g., Jenkins*, 2017 WL 1052582, at *3 ("The question turns upon the *extent* to which his Fifth Amendment rights are implicated. Since a defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege, courts evaluate the likelihood that asserting the privilege in the civil case, and risking an adverse inference as a consequence, will hurt the defendant's case. Thus, while there is no clear standard that dictates when the constitutional privilege necessitates a stay, a plausible constitutional argument would be presented only if, at a minimum, denying a stay would cause substantial prejudice to the defendant." (internal citations, quotation marks, and alterations omitted)); *In re Terrorist Attacks*

*on Sept. 11, 2001*, 2011 WL 5913526, at *5 ("Even if Sedaghaty were to assert his Fifth Amendment privilege in response to any of the Plaintiffs' document requests, it seems unlikely that he would therefore effectively forfeit his civil case." (internal citations, quotation marks, and alterations omitted)), *objections overruled*, No. 02-CV-6977 GBD FM, 2012 WL 104512 (S.D.N.Y. Jan. 11, 2012); *Sparkman*, 2009 WL 1941907, at *3 ("Defendant will not be compelled to waive his Fifth Amendment privilege against self-incrimination. However, he cannot simply make a blanket assertion of that privilege. Rather, he must assert the privilege under oath and in response to specific questions. Further, because Defendant bears the "burden of establishing the foundation of the privilege beyond his mere 'say so,' he must advise the Court of his grounds for asserting the privilege. By properly asserting his privilege, Defendant can protect his interests without indefinitely delaying Plaintiffs' case."). Here, Lamarco has not raised any issue as to his Fifth Amendment privilege. "In practice, courts evaluating a case after a defendant has been convicted have typically given less weight to the burden to a defendant of proceeding with a civil case than they would before the trial, even when the defendant may assert a Fifth Amendment privilege during the civil proceeding." *Jenkins*, 2017 WL 1052582, at *4.

In any event, the Court will be able to tailor discovery to avoid undue prejudice. *See* Milton Pollack, *Parallel Civil and Criminal Proceedings,* 129 F.R.D. 201, 211 (1990) ("I should stress that a general stay of all civil discovery is not by any means the best option available to the court or to the litigants. Stays can and should be tailored to avoid undue prejudice. By limiting both the time and subject matter covered in temporary deferrals of particular discovery, a Court can allow civil proceedings to progress as much as possible without prejudicing the relative interests of the litigants.").

Therefore, an analysis of the factors shows that a stay is not warranted in this case.

Lamarco cites to *S.E.C. v. Chestman*, 861 F.2d 49 (2d Cir. 1988) for the proposition that a "criminal matter takes precedence of the civil" and "that the broad discovery rules [cannot] be used to circumvent the more restrictive criminal discovery rules." (Def. Lamarco's Ltr. Mot. filed April 4, 2018, ECF No. 38). However, as the Plaintiff points out, *Chestman* involved the government's intervention in a criminal defendant's "civil case solely for the purpose of seeking a stay of discovery in that case pending completion of a criminal investigation concerning the same underlying facts." *Chestman*, 861 F.3d at 49. The Court held that "[t]he government had a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *Id.*

Lamarco requests a stay of the entire case rather than a stay of discovery, and in any event, Courts in this Circuit have held that *Chestman* "support[s] only the government's interest in intervening, not its interest with respect to a stay of discovery." *S.E.C. v. Chakrapani*, No. 09 CIV. 1043 (RJS), 2010 WL 2605819, at *7 n.4 (S.D.N.Y. June 29, 2010) (quoting *SEC v. Cioffi,* No. 08 Civ. 2457(FB), 2008 WL 4693320, at *1 (E.D.N.Y. Oct. 23, 2008) (internal quotation marks and brackets omitted)). Furthermore, this Court is capable of restraining discovery to the proper limits allowed under the civil rules. Additionally, the Court points out that:

> The CFTC, an independent federal regulatory agency charged with protecting the integrity of certain financial markets, is enforcing the Commodity Exchange Act in an attempt to provide restitution to some of the individuals allegedly defrauded by Defendants. "We do not deal here with a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution." [*Kordel,* 397 U.S. at 12–13, 90 S. Ct. at 769].

*A.S. Templeton Grp., Inc.*, 297 F. Supp. 2d at 535.

Finally, while Lamarco is correct that the Supreme Court held in *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an

additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution," *id.* at 448–49, 109 S. Ct. at 1902, the Court later overturned that decision in *Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997) wherein the Court held that the Double Jeopardy Clause "only protects against the imposition of multiple criminal punishments," *id.* at 99, 118 S. Ct. at 493. The Court recognized that "whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." *Id.* In order to determine whether a particular punishment is civil or criminal, a court must first determine whether the legislature expressly or impliedly indicated a preference for one label or another, and then, "[e]ven in those cases where the legislature has indicated an intention to establish a civil penalty, [courts must] inquire[] further whether the statutory scheme was so punitive either in purpose or effect, as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* (internal citations, quotation marks, and alterations omitted).

In making the latter determination the Court must look to seven factors and consider them "in relation to the statute on its face." *Id.* at 100, 118 S. Ct. at 493 (internal citation and quotation marks omitted). Of importance, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (internal citation and quotation marks omitted).

The Court does not address these factors because Lamarco has not moved to dismiss this action based on the Double Jeopardy Clause. Instead, he invokes the Double Jeopardy Clause as an example of a legal defense that he might be able to present if he were able to provide an adequate defense to himself. He states that he "does not have access to the legal research or means to further investigate this topic and it[]s pertinence to this case. Until such time as [he] has access to the

13

required law research resources, case information[,] and bench opinions, he is prejudiced in the ability to provide an adequate defense." (Def. Lamarco's Ltr. Mot. at 2, ECF No. 38).

Although the Court does not address the factors here, courts have found that the remedies requested by the CFTC do not violate the Double Jeopardy Clause. *See U.S. Commodity Futures Trading Comm'n v. Rogers*, 326 F. App'x 718, 719–20 (5th Cir. 2009) ("[T]he statutes in question expressly provide for civil monetary penalties. *See* 7 U.S.C. § 13a–1(d); 15 USC § 77t(d). Rogers has not established that there is any proof, let alone the clearest proof, as required to establish a violation of the Double Jeopardy Clause." (further internal citations and quotation marks omitted)); *Cox v. Commodity Futures Trading Comm'n*, 138 F.3d 268, 274 (7th Cir. 1998) ("We therefore hold that revocation of a registration pursuant to §§ 8a(2)(D) and (E) of the Commodity Exchange Act is not "criminal" for the purposes of the Double Jeopardy Clause. The Double Jeopardy Clause does not bar the imposition of this sanction after criminal sentencing for the same conduct."); *LaCrosse v. Commodity Futures Trading Comm'n*, 137 F.3d 925, 932 (7th Cir. 1998) ("We therefore hold that the trading ban imposed pursuant to § 9(b) of the Commodity Exchange Act is not "criminal" for the purposes of the Double Jeopardy Clause. The Double Jeopardy Clause does not bar the imposition of this sanction after criminal sentencing for the same conduct."); *Grossfeld v. Commodity Futures Trading Comm'n*, 137 F.3d 1300, 1304 (11th Cir. 1998) ("Applying the *Hudson* test, we conclude that the [CFTC] penalty was not a criminal punishment. Therefore, the successive monetary penalties assessed by the NFA and the [CFTC] do not violate the Double Jeopardy Clause."); *Hall v. U.S. Commodity Futures Trading Comm'n*, No. 17CV266, 2018 WL 1620975, at *2 (M.D.N.C. Mar. 31, 2018) (finding that the CFTC's prior action against the plaintiff could not be classified as criminal pursuant to *Hudson*); *U.S. Commodity Futures Trading Comm'n v. Stauffer*, No. 1:15-CV-00201-PLM, 2017 WL 4005634, at *3 (W.D. Mich. Aug. 8, 2017)

(finding that the CFTC's action against the defendant was not barred by the Double Jeopardy Clause pursuant to *Hudson*), *report and recommendation adopted*, No. 1:15-CV-201, 2017 WL 3981103 (W.D. Mich. Sept. 11, 2017); *U.S. Commodity Futures Trading Comm'n v. Parrilla*, No. CIV.A. 11-10621-JLT, 2013 WL 6979587, at *5 (D. Mass. Sept. 30, 2013) (holding that the imposition of fines for violation of the Commodities Exchange Act would not subject the defendant to double jeopardy because the fines are civil in nature); *United States v. Serfling*, No. 96 C 3200, 1998 WL 142453, at *5 (N.D. Ill. Mar. 23, 1998) ("[I]t is evident that Congress intended the CFTC penalty to be civil in nature. Serfling has not presented the clearest proof necessary to transform what was clearly intended as a civil remedy into a criminal penalty. Accordingly, the penalty applied by the CFTC does not violate the Double Jeopardy Clause." (internal citation and quotation marks omitted)).

Therefore, neither of the cases cited by Lamarco militate a stay in this action. Accordingly, Lamarco's motion to stay this matter pending the outcome of his criminal appeal is denied.

**B. As to Lamarco's Request to Vacate the Certificate of Default Against GDLogix**

While the CFTC is correct that Lamarco does not have standing to request that the Court vacate the certificate of default issued against GDLogix, *see Rowland v. California Men's Colony*, 506 U.S. 194, 201–02, 113 S. Ct. 716, 721, 121 L. Ed. 656 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel (internal citations omitted)); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("Since, of necessity, a natural person must represent the corporation in court, we have insisted that that person be an attorney licensed to practice law before our courts." (internal citations omitted)), the Court vacates the default without prejudice *sua sponte*, *see Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec,* 529 F.3d 371, 386 (7th Cir. 2008) ("[T]he

district court had the authority to set aside *sua sponte* an entry of default . . . for good cause."); *Anheuser–Busch, Inc. v. Philpot, III,* 317 F.3d 1264, 1267 (11th Cir. 2003) (holding that the district court could vacate the entry of default *sua sponte* ); *Rock v. AM. Express Travel Related Servs. Co.,* No. 08–CV–0853, 2008 WL 5382340, at *2 n. 4 (N.D.N.Y. Dec. 17, 2008) (same); *see also Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993) (stating that the decision to vacate an entry of default "under Rule 55(c) [is] left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties" (internal citations omitted)); *Miller v. Madison*, No. 1:12-CV-0874 LEK/CFH, 2013 WL 2181240, at *2 (N.D.N.Y. May 20, 2013) ("Because Rule 55(c) does not refer to a motion requirement, a court may set aside an entry of default *sua sponte*. (internal citations omitted)).

In deciding whether to vacate a certificate of default, a court must consider "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *United States v. Chesir*, 526 F. App'x 60, 61 (2d Cir. 2013) (quoting *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998)); *see also State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 168 (2d Cir. 2004) (stating that these criteria "should be construed generously" in favor of party seeking relief from judgment (internal quotation marks omitted)).

Here, the Court cannot say that GDLogix's default was willful. Judge Tomlinson appointed counsel for Lamarco in the hopes that the matter would be settled. It is clear from the history of the case that counsel for Lamarco did not engage in any meaningful settlement discussions. The CFTC initiated this action because they were unable to discuss settlement with

Lamarco's attorney. Repeatedly, the CFTC has expressed an interest in settlement. Lamarco expressed frustration that counsel had never engaged in settlement negotiations. Lamarco is incarcerated, and any attempt to engage in settlement discussions would necessarily require the Court's assistance, or the assistance of counsel. As the principal of GDLogix, Lamarco has been unable to secure counsel on its behalf, and the Court cannot say that the default was willful.

As to the second factor, neither Defendant has answered the complaint. However, in light of the fact that the Court is vacating the default for the sole purpose of attempting to secure a resolution to the matter, this element does not bear on the Court's analysis.

Finally, the CFTC would not be prejudiced by the vacatur. The certificate of default was entered less than one month ago. No discovery has yet commenced, and there has not been any substantive motion practice regarding GDLogix's liability. The CFTC moved for a certificate of default twelve days after Lamarco informed the Court that he intended to proceed *pro se*. The Court cannot say that the CFTC would be prejudiced by vacating the default, especially in light of the fact that it is being vacated solely for the purpose of securing counsel to discuss settlement. Indeed, other than requesting the certificate of default, the CFTC has "proceeded to litigate this case as if the default had never occurred." *Trs. of Empire State Carpenters Annuity, Apprenticeship. Labor–Mgmt. Cooperation, Pension, & Welfare Funds v. Penco United, LLC*, 13–cv–4745 (SJF)(AKT), 2015 WL 518623, at *9, 2015 U.S. Dist. LEXIS 15424, at *17 (E.D.N.Y. Jan. 6, 2015), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 14606 (E.D.N.Y. Feb. 5, 2015). Therefore, the CFTC would not be prejudiced by the vacating of the default.

In the interests of justice, the Court is vacating the certificate of default without prejudice for the sole purpose of attempting to secure *pro bono* counsel for Lamarco to discuss settlement.

## III. CONCLUSION

For the reasons stated above, Lamarco's motions to stay this matter pending the outcome of his criminal appeal and to vacate the certificate of default against GDLogix is denied. However, the Court *sua sponte* vacates the certificate of default against the corporate defendant for the sole purpose of appointing an attorney to attempt to secure a resolution of the case as to all of the Defendants. In the event that the parties are unable to reach a settlement, the CFTC is granted leave to renew their application for a certificate of default against GDLogix.

This matter is respectfully referred to Judge Tomlinson for the purposes of appointing an attorney for Lamarco, and conducting settlement negotiations. All deadlines are hereby stayed while the Court attempts to secure an attorney, and during the pendency of settlement negotiations.

It is **SO ORDERED:**

Dated: Central Islip, New York
May 7, 2018

_/s/ Arthur D. Spatt_

ARTHUR D. SPATT

United States District Judge