**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
U.S. COMMODITY FUTURES TRADING
COMMISSION,

      Plaintiff,

   -against-

DANIEL WINSTON LAMARCO and
GDLOGIX INC.,

      Defendants.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
2:17-cv-04087 (ADS)(AKT)

**APPEARANCES:**

**U.S. Commodity Futures Trading Commission**
*Attorneys for the Plaintiff*
1155 21st Street, N.W.
Washington, DC 20581
  By: Danielle E. Karst, Esq.,

140 Broadway 19th Floor
New York, NY 10005
    Michael R. Berlowitz, Esq., Of Counsel.

**Daniel Winston LaMarco and GDLogix Inc.**
*Pro Se Defendants*
#89579-053
NYC Metropolitan Correction Center
150 Park Row
New York, NY 10007

**SPATT, District Judge**:

  On July 10, 2017, the U.S. Commodity Futures Trading Commission (the "Commission" or "CFTC") commenced this action against Daniel Winston LaMarco ("LaMarco") and GDLogix, Inc. ("GDLogix," and with LaMarco, the "Defendants") for alleged fraud in connection with off-exchange leveraged or margined retail foreign currency ("forex") contracts; fraud by a commodity pool operator; failure to register as a commodity pool operator; and failure to register as an

1

associated person of a commodity pool operator in violation of the Commodity Exchange Act (the "Act" or "CEA"), 7 U.S.C. § 1, *et seq*.

Presently before the Court is the Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Fed R. Civ. P." or "Rule") 12(b)(6). For the following reasons, the Court denies the Defendants' motion to dismiss.

## I. BACKGROUND

Unless otherwise stated, the following facts are drawn from the Complaint, and construed in a light most favorable to the Commission.

From January 2011 through March 2016 (the "Relevant Period"), LaMarco, individually and as agent and officer of GDLogix, fraudulently solicited $1,492,650 from 13 individuals ("pool participants") to participate in a commodity pool that traded forex contracts, in violation of the Commodity Exchange Act and its implementing regulations (the "Regulations").

By word of mouth, emails, false monthly statements and a written "Memorandum of Offering," LaMarco solicited and accepted on behalf of GDLogix $1,492,650 from a number of pool participants located in New York, Ohio, Connecticut and Massachusetts. LaMarco deposited participants' funds into a GDLogix bank account at J.P. Morgan Chase, as well as two personal bank accounts at J.P. Morgan Chase. All of these bank accounts were opened by LaMarco and under his control.

LaMarco then transferred approximately $1.3 million of the $1,492,650 of pool participants' funds to two personal trading accounts LaMarco opened in his name at registered futures commission merchant ("FCM") Gain Capital. The remaining pool participant funds were lost through trading or misappropriated to pay his personal expenses.

LaMarco concealed his misappropriation of participants' funds by falsely representing to existing and prospective pool participants that he was profitably trading pool participants' funds in forex contracts. To further conceal his fraud and solicit additional funds from participants, LaMarco falsely represented to pool participants that he had traded forex on participants' behalf and that their funds had increased in value, and he provided pool participants with false account statements reflecting fabricated data.

In addition to the above-described fraudulent conduct, GDLogix acted at all times during the Relevant Period as an unregistered commodity pool operator ("CPO"). GDLogix engaged in a business that was in the nature of a commodity pool, investment trust, syndicate, or similar enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities or property, either directly or otherwise, for the purpose of trading in commodity interests, including without limitation, forex.

LaMarco also acted at all times during the Relevant Period as an unregistered associated person ("AP") of GDLogix. LaMarco acted as an officer or agent of GDLogix in a capacity that involved soliciting funds, securities, or property for participation in a commodity pool.

At no time during the Relevant Period did the Defendants advise participants that GDLogix was operating the pool as a CPO without being registered as such as required by federal law, or that LaMarco was acting as an AP of GDLogix without being registered as such as required by federal law.

Based on these facts, on July 10, 2017, the Commission filed a complaint alleging violations of Sections 4b(a)(2)(A)-(C), 7 U.S.C. § 6b(a)(2)(A)-(C), 4k(2), 7 U.S.C. § 6k(2), 4m(1), 7 U.S.C. § 6m(1), and 6(o)(1), 7 U.S.C. §6o(1)(A)-(B) of the Commodities Exchange Act. The Commission brings this action to enjoin the Defendants' unlawful acts and practices; to compel

their compliance with the Act and the Regulations thereunder; and to enjoin them from engaging in any commodity related activity. In addition, the Commission seeks civil monetary penalties for each violation of the Act, and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

## II. DISCUSSION

### A. THE LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bolt Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F.Supp.2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has expounded that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

"[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 669, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)).

**B. AS TO GDLOGIX'S MOTION TO DISMISS.**

A corporation may only appear in federal courts through licensed counsel. *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993); *Commodity Futures Trading Comm'n v. McCrudden*, No. 10-cv-5567, 2013 WL 142377, at *8 (E.D.N.Y. Jan. 11, 2013) ("As this Court has previously noted, the Second Circuit has made clear that 'a corporation is not allowed to appear in federal court except by a licensed attorney,' and 'a non-attorney is not allowed, in federal court, to represent anyone other than himself.'") (quoting *United States v. Twenty Miljam–350 IED Jammers,* 669 F.3d 78, 91 (2d Cir. 2011)). Here, the Defendants are proceeding *pro se*. However, LaMarco is not a licensed attorney and thus cannot legally represent GDLogix. Accordingly, the Court will disregard the motion to the extent LaMarco seeks dismissal of the claims against GDLogix, because GDLogix, as a corporation, cannot itself proceed *pro se*. *See Batac Dev. Corp. v. B & R Consultants Inc.,* No. 98-cv-721, 2000 WL 307400, at *2 (S.D.N.Y. Mar. 23, 2000) (holding that the corporate plaintiff's motion is disregarded because the motion was made by a non-attorney, who cannot legally represent the plaintiff).

**C. AS TO THE COMMODITIES EXCHANGE ACT.**

The Complaint asserts violations of Sections 4b(a)(2)(A)-(C), 4k(2), 4m(1), and 4o(1)(A)-(B) of the Commodities Exchange Act. The vast majority of the motion to dismiss consists of a

counter-narrative of the offending conduct and a rebuttal of the factual allegations plead in the Complaint. The Court will not incorporate these newly asserted facts into its adjudication of the motion. LaMarco draws them neither from within the four corners of the Complaint nor the sort of documents properly considered on a motion to dismiss. *See DiFolco*, 622 F.3d at 111 ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). Motions to dismiss are not vehicles for resolving the parties' factual disputes. *See Henry Avocado Corp. v. Z.J.D. Brother, LLC*, No. 17-cv-4559, 2017 WL 6501864, at *6 (E.D.N.Y. Dec. 19, 2017) ("[R]esolving factual disputes is precisely what this Court cannot do on a motion to dismiss; instead, a district court must credit the facts in the plaintiff's well-pleaded complaint as true and draw all plausible inferences in the plaintiff's favor at this procedural stage."). Looking solely at the facts alleged in the Complaint, the Court finds that that Commission presented sufficient facts to withstand a motion to dismiss.

   1. **As to Sections 4b(a)(2)(A)-(C).**

"To prove a violation of §§ 4b(a)(2)(A)-(C) of the CEA, the CFTC must prove that defendants (1) made misrepresentations or factual omissions; (2) that were material to the investor's decision to invest; and (3) that defendants acted with scienter." *Commodity Futures Trading Comm'n v. Highland Stone Capital Mgmt.*, L.L.C., No. 11-cv-5209, 2013 WL 4647191, at *15 (S.D.N.Y. Aug. 29, 2013); *Commodity Futures Trading Comm'n v. Wright*, No. 17-cv-4722, 2018 WL 6437055, at *2 (S.D.N.Y. Dec. 7, 2018). "A statement is material 'if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision.'" *Commodity Futures Trading Comm'n v. Friedrichsen*, No. 18-cv-1830,

2018 WL 7253430, at *3 (S.D.N.Y. Nov. 26, 2018) (quoting *Commodity Futures Trading Comm'n v. AVCO Fin. Corp.*, 28 F. Supp. 2d 104, 115 (S.D.N.Y. 1998)). Scienter is a mental state embracing an intent to deceive, manipulate, or defraud, and may be shown by proof of recklessness. *Id.*

Because Section 4b(a)(2)(A)-(C) claims sound in fraud, complaints asserting such violations must satisfy Rule 9(b)'s requirement of pleading fraud with particularity. *See Commodity Futures Trading Comm'n v. Standard Forex, Inc.*, No. 93-cv-0088, 1993 WL 809966, at *15 (E.D.N.Y. Aug. 9, 1993); *DGM Investments, Inc. v. New York Futures Exch., Inc.*, 265 F. Supp. 2d 254, 263 (S.D.N.Y. 2003). Under Rule 9(b), a complaint must specify when and where the alleged misrepresentation took place, as well as the content of those misrepresentations and the identity of the speaker. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986); *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir. 1978); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972). The complaint must further give particulars as to the way in which the plaintiff alleges the statements were fraudulent. *Rotter v. Institutional Brokerage Corp.*, No. 93-cv-3578, 1994 WL 389083, at *3 (S.D.N.Y. July 22, 1994).

The Court finds that the Complaint states a claim for violations of Sections 4b(a)(2)(A)-(C) and pleads fraud with sufficient particularity. The Complaint alleges that LaMarco, acting as the agent of GDLogix, fraudulently solicited pool participants and prospective pool participants by making misrepresentations and omissions about Defendants' forex trading and profits; misappropriated pool participants' funds to pay for withdrawal requests of other pool participants; and fabricated false account statements. The Complaint identifies LaMarco as the speaker and asserts that he began verbally soliciting pool participants in January 2011 and sent fabricated monthly statements in the form of a spreadsheet between February 2011 and February 2016. The

Complaint further explains that the fabricated statements depicted fictitious returns showing the value of the commodity pool increase, notwithstanding the fact that LaMarco had lost nearly all of the participants' funds through unsuccessful trading and diversion of funds.

These allegations satisfy Rule 9(b)'s heightened pleading standard regarding the falsity of the misrepresentations. *See, e.g.*, *Standard Forex, Inc.*, 1993 WL 809966, at *16; *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 339 (S.D.N.Y. 2010); *DGM Investments, Inc.*, 265 F. Supp. at 263–64; *Rotter*, 1994 WL 389083, at *3. Further, LaMarco's misrepresentations were material because they concerned profits and risk. *See Commodity Futures Trading Comm'n v. Int'l Fin. Servs., Inc.*, 323 F. Supp. 2d 482, 501 (S.D.N.Y. 2004) ("[M]isrepresentations concerning profit and risk ... are ... material as a matter of law.").

As for LaMarco's intent, the Second Circuit permits plaintiffs to establish scienter in one of two ways: "'(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious behavior or recklessness.'" *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995)). The Complaint contains sufficient facts to support an inference of scienter under either method because LaMarco owned the accounts and controlled the trading in the forex accounts. *See Wright*, 2018 WL 6437055, at *3 ("Because Wright was the CEO and sole authorized signatory of WTCG's bank and forex trading accounts and engaged in account transactions in furtherance of his duties as WTCG's agent, WTCG knew or should have known that pool funds were being misappropriated and were not used for forex trading.").

Finally, LaMarco asserts that the Complaint failed to allege loss causation. However, "[t]here is no bright line rule requiring plaintiffs to plead loss causation under the CEA, as required

8

for claims under the Exchange Act." *Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 240 n.11 (S.D.N.Y. 2019); *Sullivan v. Barclays PLC,* No. 13-cv-2811, 2017 WL 685570, at *31 (S.D.N.Y. Feb. 21, 2017) ("[M]any courts have observed that loss causation is not a statutory element of proof under the CEA, the way that it is for fraud-on-the-market claims in the securities context."). To the extent such a requirement existed, it appears to apply only to private litigants, not CFTC-brought enforcement actions. 7 U.S.C.A. § 25(a)(1) (providing private right of action only when person suffers "actual damages"); *see also cf. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 528 (S.D.N.Y. 2014) (explaining jurisdictional rules for private suits under the Commodities Exchange Act differ from those in government enforcement actions).

Therefore, the Complaint states a claim for violations of Sections 4b(a)(2)(A)-(C).

**2. As to Section 4o(1).**

Section 4o(1) of the Act, which provides that:

(1) It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—

    (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

    (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

7 U.S.C.S. § 6o(1).

The elements required to establishing a fraud claim under Section 4o(1) are "essentially the same" as for a fraud claim under Section 4b(a)(2)(A)-(C). *Schwartz et. al v. O'Grady*, No. 86-cv-4243, 1990 WL 156274, at *16 (S.D.N.Y. Oct. 12, 1990); *Commodity Futures Trading Comm'n v. All City Investments, LLC*, No. 16-cv-7372, 2018 WL 2465377, at *2 (S.D.N.Y. June 1, 2018).

"The same elements of fraud applicable to violations of section 4(b)(a)(2)(A)-(C) of the Act . . . must be established for this claim, plus an additional element—that the violator acted as a CPO." *Wright*, 2018 WL 6437055, at *3 (citing *Commodity Futures Trading Comm'n v. iGlobal Strategic Mgmt., LLC*, No. 12-cv-6574, 2012 WL 6930308, at *5 (S.D.N.Y. Nov. 19, 2012)). The Act defines a CPO, in relevant part, as any person "engaged in a business that is of the nature of a commodity pool . . . who, in connection therewith, solicits, accepts, or receives from others, funds . . . for the purpose of trading in commodity interests." 7 U.S.C.S. § 1a(11)(i).

The Court explained in the previous section why the conduct detailed in the Complaint stated a claim for fraud under Sections 4(b)(a)(2)(A)-(C). *See Friedrichsen*, 2018 WL 7253430, at *4 ("As the Complaint adequately states a claim against Defendant for violating 7 U.S.C. § 6b (see above), so too does it adequately state a claim against Defendant for violating Section 4o(1) of the Act, 7 U.S.C. § 6o(1)."). These facts also suffice to plead that GDLogix acted as a CPO because the object of the fraudulent conduct was to solicit and accept funds from others for the purpose of trading in commodity interests.

Therefore, the Complaint states a claim for violations of Section 4o(1).

**3. As to Section 4m(1) and 4k(2).**

Section 4m(1) require the registration of a CPO that uses any means or instrumentality of interstate commerce and engages in forex transactions, respectively. 7 U.S.C. § 6m(1). Section 4k(2) of the Act requires all APs of CPOs (subject to certain specified exceptions and exemptions, not applicable here) to be registered with the Commission. 7 U.S.C. § 6k(2).

The Complaint alleges that GDLogix operated as a CPO by soliciting, accepting, or receiving funds from participants for the purpose of engaging in forex transactions and perpetrated its fraud by word of mouth and email across state lines. It also alleges that LaMarco was associated

with GDLogix as an officer or agent, in a capacity that involved the solicitation of funds, securities, or property for participation in a commodity pool. Further, the Complaint asserts that neither GDLogix nor LaMarco registered with the Commission as a CPO or an AP of a CPO, respectively, thereby pleading facts sufficient to establish violations of Section 4m(1) and 4k(2). *See Wright*, 2018 WL 6437055, at *4 ("Because WTCG engaged in forex transactions and perpetrated its fraud by mail, email, and telephone, its failure to register also constitutes violations of section 4m(1) of the Act."); *Commodity Futures Trading Comm'n v. Algointeractive Inc.*, 2018 WL 7019360, at *13 (S.D.N.Y. Nov. 13, 2018) ("During the Relevant Period, Zecchini acted as an AP of Algointeractive without registering with the Commission as an AP of a CPO. Thus, Zecchini acted as an unregistered AP of a CPO in violation of 7 U.S.C § 6k(2).")

Therefore, the Complaint states a claim for violations of Section 4m(1) and 4k(2).

### III. CONCLUSION

For the foregoing reasons, the Court denies the Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(6) in its entirety.

It is **SO ORDERED**:

Dated: Central Islip, New York
September 5, 2019

          __/s/ Arthur D. Spatt__
          ARTHUR D. SPATT
          United States District Judge