**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
U.S. COMMODITY FUTURES
TRADING COMMISSION,

       Plaintiff,         **REPORT AND**
                    **RECOMMENDATION**
                    17-cv-4087 (DG) (JMW)

     -against-

 DANIEL WINSTON LAMARCO AND
 GDLOGIX INC.,

        Defendants.
-------------------------------------------------------------------X

**A P P E A R A N C E S :**

Danielle E. Karst
**U.S. Commodity Futures Trading Commission**
1155 21st Street, N.W.
Washington, DC 20581
*Attorney for Plaintiff*

Daniel W. LaMarco
518 Ft. Washington Avenue
BSMT C
New York, NY 10033
*Pro Se Defendant*

*No appearance by Defendant GDLogix Inc.*

**WICKS,** Magistrate Judge:

    Plaintiff, United States Commodity Futures Trading Commission ("CFTC"),

commenced this action on July 10, 2017, seeking injunctive and other equitable relief for alleged

violations of the Commodity Exchange Act ("CEA") by Defendants Daniel Winston LaMarco,

and GDLogix Inc. ("GDLogix").  (DE 1.)  LaMarco is a former independent software consultant

and the founder of GDLogix, a software consultancy business.  (*Id.*)  The Clerk of the Court

entered certificates of default as to Defendants on March 23, 2022.  (DE 110.)  Before the Court,

on referral from the Hon. Diane Gujarati, are: (1) Plaintiff's motion for default judgment, (*see* DE 115), and (2) LaMarco's motion to vacate entry of default, (*see* DE 117). For the reasons stated herein, the undersigned respectfully recommends granting LaMarco's motion to vacate entry of default, and to the extent the motion is construed as a motion on GDLogix's behalf as well, that as to that defendant, the motion be denied. The undersigned further recommends denying Plaintiff's motion for default judgment as to LaMarco but granting it as to GDLogix.

## BACKGROUND

Plaintiff alleges that in January 2011, LaMarco, who acted both individually, and as an agent and officer of GDLogix, began to solicit individuals ("Pool Participants") to trade margined or leveraged retail foreign currency ("Forex") contracts in a commodity pool. (*Id.*) LaMarco provided a "Memorandum of Offering" to each of the pool participants which indicated that the funds would be placed in a commodity pool managed by GDLogix. (*Id.*) The CFTC asserts that (1) LaMarco made "material and false" misrepresentations to Pool Participants by sending fraudulent monthly statements to them purporting to be profitable, (*Id.*), and (2) LaMarco failed to disclose to Pool Participants the fact that neither he nor GDLogix were registered with the CFTC, as required, while engaged in the solicitation of funds for the purpose of participation in a commodity pool. (*Id.*; DE 115-3.)

As a result of his actions, LaMarco accumulated a total of $1,492,650 from thirteen individuals from New York, Connecticut, Massachusetts, and Ohio. (DE 1.) Plaintiff further alleges LaMarco deposited approximately $1.3 million into two personal trading accounts in his name and lost nearly all the funds by April 2016. (DE 1.) Plaintiff contends that Defendants violated certain provisions of the Commodity Exchange Act, particularly 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6k(2), 6m(1), and 6*o*(1)(A) and (B). (*Id.*) Thus, Plaintiff filed the instant

action against Defendants on July 10, 2017, and served a copy of the Summons and Complaint upon both Defendants on August 2, 2017. (DE 15; DE 16.) LaMarco accepted service[1] of process on behalf of himself and GDLogix while incarcerated at the New York Metropolitan Correctional Center ("MCC").[2] (DE 15; DE 16.) Answers to the Complaint were due on August 23, 2017, pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i). (DE 15; DE 16.)

On August 7, 2017, the Honorable A. Kathleen Tomlinson issued an Order noting that that the Court would be seeking to appoint an attorney from the Eastern District of New York's *Pro Bono* panel to represent LaMarco (who was incarcerated at that time) and GDLogix throughout settlement negotiations. (DE 18.) Judge Tomlinson held all other aspects of the case in abeyance until further Order of the Court. (*Id.*) *Pro bono* counsel, Robert J. Del Col, was appointed to represent LaMarco on September 11, 2017 for the limited purpose of negotiating a settlement with Plaintiff. (DE 20; DE 21.) Once it became clear that the case would not settle after nearly five months of negotiations, Judge Tomlinson relieved the *pro bono* counsel from his temporary appointment on March 2, 2018 and resumed discovery proceedings. (DE 33.) Pursuant to the March 2, 2018 Order, if the Court did not receive notice of newly retained counsel by April 6, 2018, LaMarco would be required to proceed on a *pro se* basis, and if GDLogix failed to obtain counsel by that date, Plaintiff would be permitted to seek a default judgment against it. (*Id.*) The Court further ordered that an Answer to the Complaint must be filed by Defendants on April 30, 2018. (*Id.*)

---

[1] At the outset, the Court notes that it is undisputed that LaMarco and GDLogix were properly served a copy of the Summons and Complaint by Plaintiff on August 2, 2017, (DE 15; DE 16), and Defendants do not raise or allege deficiencies regarding service of process or personal jurisdiction with respect to the motions at issue.

[2] Prior to the initiation of this civil action, LaMarco pleaded guilty to one count of wire fraud and one count of commodities fraud in a criminal case. *See U.S. v. Lamarco*, No. 16-CR-00433, 2017 WL 924791, at *1 (E.D.N.Y. Feb. 16, 2017).

GDLogix failed to retain counsel by the deadline, and pursuant to Fed. R. Civ. P. 55(a), Plaintiff requested a Certificate of Default from the Clerk of the Court, which was granted and entered by the Clerk of the Court on April 19, 2018. (DE 41; DE 43.) Subsequently, LaMarco requested an extension to file the Answer, which was granted by the Court on May 2, 2018, and the new deadline was set for June 30, 2018. (DE 47; Electronic Order dated May 2, 2018.) Plaintiff also requested entry of default against LaMarco in his individual capacity on May 2, 2018, but it was denied given the deadline extension to file an Answer. (DE 49; Electronic Order dated May 4, 2018.) On May 7, 2018, the Court vacated the Certificate of Default against GDLogix *sua sponte* for the purpose of appointing another attorney to represent Defendants and negotiate a potential settlement. (DE 51.) All deadlines were stayed pending settlement negotiations. (*Id.*)

Appointed counsel notified the Court on July 10, 2018 that after speaking with LaMarco, they believed settlement was highly unlikely until LaMarco's criminal appeal was resolved. (DE 56.) August 1, 2018, LaMarco moved to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (DE 59.) On September 13, 2018, the Court lifted the stay imposed on May 7, 2018, so that Defendants could be given the opportunity to file an Answer. (Electronic Order Dated Sept. 13, 2018.) The Hon. Arthur D. Spatt, the district judge at the time, denied the motion to dismiss in its entirety on September 5, 2019. (DE 84.) Plaintiff attempted to serve a copy of the Order denying the motion to dismiss, but the mailings were returned by the MCC as undeliverable because LaMarco was no longer at the facility. (DE 85; DE 86.) LaMarco did not receive a copy of the Order until February 13, 2020. (DE 87.) Subsequently, the case was reassigned to the Hon. Diane Gujarati and the undersigned. (Electronic Orders dated Dec. 10, 2020, and Nov. 19, 2021.)

Discovery proceedings continued pursuant to the undersigned's scheduling order, and a status conference was held on January 19, 2022. (DE 100.) The Court reminded LaMarco that as he was previously advised by Judge Tomlinson, GDLogix as a corporate entity may not proceed *pro se* and that the entity must retain counsel. (*Id.*) LaMarco advised the Court that he was in the process of obtaining counsel to represent himself and GDLogix. (*Id.*) The Court gave LaMarco until February 18, 2022, for counsel to file a Notice of Appearance, and forewarned LaMarco that this would be the final extension of time for him to obtain counsel. (*Id.*)

On February 25, 2022, LaMarco advised the court that he would not retain counsel for either himself or GDLogix, and on March 10, 2022, the Court allowed Plaintiff to renew its request for certificates of default against LaMarco and GDLogix. (DE 104; Electronic Order Dated March 10, 2022.) Plaintiff requested the Clerk of the Court for Certificates of Default the following day. (DE 107.) On March 14, 2022, LaMarco filed a Motion to Compel the previously appointed *pro se* counsel Del Col to release all the records regarding the related criminal case,[3] as well as records pertaining to the present civil action. (DE 108.) The Clerk of the Court entered defaults against LaMarco and GDLogix pursuant to Fed. R. Civ. P. 55(a) on March 23, 2022. (DE 110.)

Subsequently, on May 5, 2022, the Court denied the Motion to Compel with leave to renew, but only if made in conjunction with a Motion to Vacate the Certificate of Default. (Electronic Order dated May 5, 2022.) On May 9, 2022, Plaintiff filed a motion for default judgment against Defendants pursuant to Fed. R. Civ. P. 55(b) and E.D.N.Y. Local Rule 55.2(b) for Defendants' failure to file an answer or otherwise respond to the Complaint. (DE 115.) LaMarco filed a motion to vacate the entry of default, and a motion for reconsideration of motion

---

[3] *See generally, Lamarco*, 2017 WL 924791 (E.D.N.Y. Feb. 16, 2017).

to compel on May 11, 2022.  (DE 116; DE 117.)  LaMarco asserts that the *pro se* counsel failed to respond to his "numerous attempts at obtaining relevant evidence that is crucial to the defense of this action."  (*Id.*)

Judge Gujarati then referred Plaintiff's motion for default judgment (DE 115) and Defendant's motion to vacate the clerk's entry of default (DE 117), to the undersigned for a report and recommendation.  (Electronic Order dated May 11, 2022; Electronic Order dated May 12, 2022.)  The Court addresses each motion below.

## I.    Defendant's Motion to Vacate Entry of Default

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).  Once a default is entered by the Clerk, "[t]he court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  The court weights three factors in determining whether good cause exists to vacate an entry of default: (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  The burden rests squarely with the defaulting to demonstrate that a vacatur is warranted and appropriate under the circumstances.  *See In re Martin-Trigona*, 763 F.2d 503, 505 n.2 (2d Cir. 1985).

"Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  *Enron Oil Corp.*, 10 F.3d at 96 (citing *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986)).  For the reasons stated herein, the undersigned respectfully recommends granting LaMarco's motion to vacate entry of default as to

LaMarco in his individual capacity and denying the motion, to the extent it can be construed as one, as to GDLogix.

The disposition of a motion for relief from an entry of default is "left to the sound discretion of the district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp.*, 10 F.3d at 95; *Rolle v. Hardwick*, No. 14-cv-5247 (JS) (AYS), 2016 U.S. Dist. LEXIS 60112, at *6 (E.D.N.Y. May 4, 2016). However, the Second Circuit disfavors defaults generally, preferring to resolve cases on the merits. *Id.* (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001). And "[t]hus, any doubts should be resolved in favor of vacating the default judgment." *Id.* (citing *Enron Oil Corp.*, 10 F.3d at 95-96). "[T]he 'good cause' standard of Rule 55(c) 'should be construed generously' and, 'when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party.'" *SEC v. Patel*, No. 21-cv-994 (SVN), 2022 WL 2704099, at *4 (D. Conn. July 12, 2022) (quoting *Enron*, 10 F.3d at 96).

The Court is also mindful that when a certificate of default has been entered by the Clerk of the Court, but no default judgment has been entered, then Rule 55(c) applies, which is a more lenient standard than to set aside a default judgment under Rule 60(b). *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)."). It is against this backdrop that the Court considers the present motion.

Courts typically assess the following three factors when deciding whether to "relieve a party from default or from a default judgment . . . (1) the willfulness of default, (2) the existence

of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Maldonado v. Landzign Corp.*, No. 15-cv-3054 (DRH) (GRB), 2016 WL 4186815, at *1 (E.D.N.Y. July 14, 2016), *report and recommendation adopted,* 2016 WL 4186982 (E.D.N.Y. Aug. 8, 2016) (citation omitted).  The factors are "to be weighed and balanced" and no one factor is determinative.  *Staples, Inc. v. W.J.R. Assocs.*, No. 04-cv-0904 (SJ), 2005 WL 820496, at *3 (E.D.N.Y. Apr. 7, 2005) (citations omitted).

### A.  Vacatur of Default as to GDLogix

As an initial matter, it is unclear whether LaMarco seeks vacatur of the entry of default on behalf of GDLogix because he does not make any specific arguments on behalf of GDLogix, however, he does request "the *Certificates* of Default" be vacated.  (*See* DE 117 at 4.)  Even affording LaMarco the leeway typically given *pro se* litigants, and construing his papers as requesting such relief, LaMarco cannot move on GDLogix's behalf and regardless, GDLogix deliberately defaulted by failing to obtain counsel in accordance with the Court's previous directives.  It is well-established within the Second Circuit, that a corporation may only litigate matters through a licensed attorney.  *See Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983); *see also Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) ("[I]t is settled law that a corporation cannot appear other than by its attorney.").  When a corporate defendant fails to adhere to the court's instructions to obtain counsel so that the case could proceed to trial, "such cavalier disregard for a court order is a failure, under Rule 55(a), to 'otherwise defend as provided by these rules.'"  *Id.*

A certificate of default has been entered against GDLogix twice on the same basis.  The first time was after Judge Tomlinson notified GDLogix it cannot proceed on a *pro se* basis, and yet it still failed to retain counsel.  (*See* DE 41; DE 43).  Thereafter, the Court *sua sponte* vacated

the entry of default "for the sole purpose of appointing an attorney to attempt to secure a resolution of the case as to all of the Defendants. In the event that the parties are unable to reach a settlement, the CFTC is granted leave to renew their application for a certificate of default against GDLogix." (Electronic Order dated May 7, 2018.) The second time was when the undersigned reminded LaMarco that he was previously advised by Judge Tomlinson that GDLogix is a corporate entity and may not proceed *pro se* and that he must retain counsel. (DE 100.) LaMarco advised the Court that he was in the process of obtaining counsel to represent himself and GDLogix. (*Id.*) The Court gave LaMarco until February 18, 2022, for counsel to file a Notice of Appearance, and forewarned LaMarco that this would be the final extension of time for him to obtain counsel on behalf of GDLogix. (*Id.*) LaMarco's February 08, 2022 letter to the Court advised that LaMarco was submitting his request to engage in settlement negotiations with Plaintiff and that the "costs of retaining an attorney balanced against the needs of his two daughters precludes the engagement of counsel." (DE 102.) Plaintiff's February 15, 2022 response made clear it was not interested in settlement negotiations given the multiple failed negotiations in the past. (DE 103.) Plaintiff also reiterated that GDLogix, as a corporation, simply cannot proceed on a *pro se* basis. (*Id.*)

GDLogix does not now have counsel nor does LaMarco even state that he intends to retain counsel for GDLogix. Thus, GDLogix's default was willful and continues be so. In any event, as Plaintiff correctly notes, "LaMarco is not a licensed attorney and thus cannot legally represent GDLogix." (DE 118 at 1.) Since LaMarco cannot represent GDLogix, he cannot move to vacate the entry of default on its behalf, and as such vacatur would not be appropriate, especially given the circumstances here. *See Chiquita Fresh N. Am., LLC v. Long Island Banana Corp.*, No. 14-cv-982 (GRB) (AKT), 2021 WL 8316281, at *2 (E.D.N.Y. July 15, 2021)

(recommending denial of motion to vacate entry of default because corporate defendant failed to retain counsel and the unlicensed individual defendants' attempts to request relief on its behalf were "improper and ineffective."), *report and recommendation adopted*, Electronic Order (Sept. 10, 2021); *see also Shapiro*, 386 F.2d at 427 (reversing the district court's denial of the motion for interlocutory default judgment where the corporation failed to appear with counsel and the district court denied the motion and designated the corporation as representing itself *pro se*).

For the aforementioned reasons, this Court respectfully recommends the motion to vacate entry of default with respect to GDLogix be denied.

## B.  Vacatur of Default as to LaMarco

"It is the responsibility of the trial court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard." *Enron Oil Corp.*, 10 F.3d at 96 (citing *Merker v. Rice*, 649 F.2d 171, 174 (2d Cir. 1981)).  The court should "grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se*." *Id.*  Here, the Court finds that LaMarco did not willfully default because he actively participated in the attempted defense of this case as demonstrated by his repeated communications with the court, and that on balance, the factors favor vacatur.

### a.  Willfulness

Willfulness is established by "evidence of bad faith" or the presence of "egregious or deliberate conduct." *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir.1996).  Willfulness "refer[s] to conduct that is more than merely negligent or careless, but is instead egregious and . . . not satisfactorily explained." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)) (internal quotation

marks omitted).  "[T]he degree of negligence in precipitating the default is a relevant factor to be considered."  *Oscilloscope Pictures, Inc. v. Monbo*, No. 17-cv-4758 (MKB) (ST), 2019 WL 2435644 at *6 (E.D.N.Y. Mar. 25, 2019) (quoting *Jaramillo v. Vega*, 675 F. App'x 76, 76-77 (2d Cir. 2017) (summary order)).  Where the "conduct that led to the default was careless but (barely) adequately explained, and not willful within the meaning of the law in this Circuit", the entry of default should be vacated. *See Gilmore v. Saratoga Ctr. For Care LLC*, 2022 WL 17721252 (N.D.N.Y. Dec. 15, 2022).

A party defaults when he "has failed to plead or otherwise defend" the present case. Fed. R. Civ. P. 55(a).  There is a broad understanding of the phrase "otherwise defend" within the Second Circuit.  *See CFTC v. McCrudden,* No. 10-cv-5567 (DRK) (AKT), 2015 WL 5944229, at *21 (E.D.N.Y. Oct. 13, 2015), *report and recommendation adopted*, 2015 WL 7161671 (E.D.N.Y. Nov. 13, 2015) (quoting *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013)).  "A default is not willful when it was caused by a 'mistake made in good faith.'"  *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010) (quoting *Enron Oil Corp.*, 10 F.3d at 96)).  A default is willful in the absence of a justification for the defendant's "failure to respond or 'deliberate[] fail[ure]' to respond to the complaint, [thus] the defendant's default may be considered egregious and not satisfactorily explained."  *Oscilloscope Pictures Inc.*, 2019 WL 2435644, at *6 (quoting *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005)); *see also Am. All. Ins. Co., Ltd.*, 92 F.3d at 60-61 (noting that the Second Circuit has "refused to vacate a judgment where the moving party had apparently made a strategic decision to default").

LaMarco asserts that he significantly defended this action to "the best of his ability," and he "responded to the allegations through numerous motions" and docket entries

throughout the duration of this case.  (DE 117.)  LaMarco further asserts in the motion to

vacate that he "answered every allegation in the [C]omplaint" as demonstrated by the motion

to dismiss (DE 59) he filed with the Court on August 1, 2018, and that he has sought to settle

the case following the appeal of his criminal conviction.  (DE 117.)

Additionally, LaMarco notes that after he submitted a letter updating the Court on

discovery, (DE 73), and his response to the Opposition of the Motion to Dismiss (DE 71; DE

69), on November 1, 2018, the Court ordered that "[n]o further submissions are to be filed by

the Defendant until the Court responds to his existing filings."[4]  (DE 117; Electronic Order

dated Nov. 1, 2018.)  LaMarco claims that he complied with the Court's order and only

provided submissions as requested.  (DE 117.)

In opposition, Plaintiff asserts that Defendants deliberately defaulted, and that

LaMarco's motion to dismiss does not constitute an answer.  (DE 118.)  Plaintiff states that

after Judge Spatt denied Defendant's motion to dismiss, LaMarco was required to file an

answer within ten (10) business days after the motion was decided.  (*Id.*)  In addition, Plaintiff

argues that LaMarco's correspondences with the Court are "insufficient to justify vacating the

defaults," and that his "*pro se* status does not excuse his complete failure to respond to the

Complaint for nearly five years."  (*Id.*)  It further argues that Defendants "appear to have made

a strategic decision not to answer the complaint," and that LaMarco is an "obstructionist

adversar[y]."  (*Id.*)  Additionally, the CFTC claims that LaMarco failed to participate in

discovery and defend the instant matter.

Rule 8(b)(1) requires an answer to "(A) state in short and plain terms its defenses to

---

[4] It appears LaMarco inadvertently claimed that Judge Spatt imposed the November 1, 2018 stay on court
filings, rather than Judge Tomlinson.  (Electronic Order Dated Nov. 1, 2018.)

each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party."  Fed. R. Civ. P. 8(b)(1).  A *pro se* litigant's mistaken misunderstanding of the law is sufficient for the court to find a lack of willful default.  *Ocilloscope Pictures Inc.*, 2019 WL 2435644, at *6.   And as the Second Circuit has stated:

> [C]oncerns regarding the protection of a litigant's rights are heightened when the party held in default appears *pro se*. A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge.

*Enron*, 10 F.3d at 96.

As such, the undersigned views the *pro se* pleadings here liberally and holds them to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

It is beyond the role of the Court to attempt to ascertain whether LaMarco comprehends the significance of filing an answer to the Complaint, or whether he knows what legally constitutes an Answer.  *See McCrudden*, 2015 WL 5944229, at *18.  Indeed, it is clear that LaMarco mistakenly believed that by filing a motion to dismiss, he sufficiently answered each allegation in the Complaint.  (*See* DE 117.)  He repeatedly makes this claim throughout his motion to vacate.  (*See id.* ("As the docket demonstrates the Defendant has responded to the allegations through numerous motions and entries to the docket;" "Defendant has answered every allegation in the complaint.")).  There is no evidence in the record that LaMarco acted with bad faith, or strategically sought to avoid the filing of an answer.

This Court  also finds it significant that through his many communications with the Court and his involvement with the case over the previous five  years, LaMarco has "otherwise defended" this action and continues to attempt to do so.  While LaMarco was

incarcerated at the MCC, Judge Tomlinson appointed *pro bono* counsel to represent LaMarco

and GDLogix to help Defendants facilitate settlement negotiations with the CFTC.  (DE 18.)

This *pro bono* attorney also represented LaMarco in the appeal of his adjacent criminal case,

but the attorney only had a limited purpose of negotiating a settlement with the CFTC in this

civil matter.  (DE 20; DE 21.)  After approximately five months of negotiations without any

progress, the Court relieved the attorney on March 2, 2018, and imposed a new deadline of

April 30, 2018 for LaMarco to answer the complaint, and obtain new counsel by April 6,

2018.  (DE 33.)

Since the termination of the temporary appointment of the *pro bono* counsel, LaMarco

repeatedly corresponded with the Court and Plaintiff through at least twenty-two (22) docket

entries and communications.  He was not, as seen ofttimes in default settings, radio silent:

- April 4, 2018: motion to stay the instant civil case, pending the appeal of LaMarco's criminal conviction. (DE 38.)

- April 25, 2018: motion for extension of time to file an answer to the Complaint, and request to the Clerk of the Court not to enter an entry of default against Defendants.  (DE 44.)

- April 30, 2018: motion for extension of time to file response to Plaintiff's motion to strike (DE 45) Defendant's motion for extension of time (DE 44) to file an Answer to the Complaint.  (DE 47.)

- May 2, 2018: amended motion to stay the case pending the appeal of LaMarco's criminal conviction.  (DE 50.)

- Aug. 1, 2018: Defendant's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  (DE 59.)

- Sept. 10, 2018: motion for extension of time to file a response to Plaintiff's opposition to Defendant's motion to dismiss.  (DE 62.)

- Sept. 27, 2018: reply in response to Plaintiff's opposition.  (DE 65.)

- Oct. 3, 2018: letter to the Court describing LaMarco's difficulties with legal mail while being incarcerated at the MCC, (DE 69), and letter to the Court requesting a synopsis/case

status report.  (DE 66.)

- Oct. 9, 2018: LaMarco's fourth (4th) submission of the response to the opposition of the motion to dismiss.  (DE 71.)

- Oct. 29, 2018: letter to Court providing an update on the discovery process.  (DE 73.)

- Dec. 14, 2018: attended status conference where LaMarco explained his difficulties in gathering responsive documents for production.  (DE 75.)

- Jan. 7, 2019: status report claiming that LaMarco's mail issues at the MCC got worse. (DE 78.)

- Feb. 11, 2019: letter to Plaintiff requesting the production of documents, tangible items, and other records.  (DE 79.)

- April 26, 2019: letter in response to Plaintiff's status update regarding the progress of discovery (DE 81).  (DE 83.)

- Dec. 8, 2021: "joint" status report submitted by LaMarco.  (DE 96.)

- Jan. 19, 2022: attended status conference advising the Court he was in the process of obtaining counsel to represent himself and GDLogix.  (DE 100.)

- Feb. 8, 2022: requested settlement negotiations because the criminal appeal had completed, and he continued to rebuild his life.  (DE 102.)

- Feb. 25, 2022: attended status conference and advised the Court of his *pro se* status. (Minute Order Dated Feb. 25, 2022, DE 104.)

- March 14, 2022: motion to compel his *pro bono* appointed counsel (DE 20; DE 21; Electronic Order Dated Mar. 2, 2018) to turn over the legal files from his criminal case and the instant case.  (DE 108.)

- March 23, 2022: submitted affidavit of service from serving his former *pro bono* counsel. (DE 111.)

- May 11, 2022: motion for reconsideration of the Court's May 5, 2022 Order denying Defendant's motion to compel, (DE 116; *see also* Electronic Order Dated May 5, 2022), and motion to vacate the Clerk of the Court's entry of default (DE 110).  (DE 117.)

The record amply demonstrates that LaMarco actively participated in the attempted

defense of this action.  And LaMarco appears to have made a good faith attempt in responding

to each of the allegations made in the Complaint, demonstrated by his motion to dismiss (DE 59), and his reply in response to the opposition of the motion to dismiss.  (DE 65; DE 71.)  Within the motion to dismiss, LaMarco itemized eleven (11) allegations set forth in the complaint and provided his response to each one with multiple subparts.  (DE 59.)  Although this motion to dismiss falls short of what the Court deems a proper answer, it sufficiently shows that LaMarco did not deliberately or strategically avoid filing an answer, and that LaMarco has been consistent in his own terms of defending this action.  *See McCrudden*, 2015 WL 5944229, at *20-21.   LaMarco as a *pro se* should not be punished for mere procedural or technical shortcomings.  *See G&G Closed Circuit Events, LLC v. Lopez*, 2022 WL 633875, at *2 (S.D.N.Y. Mar. 4, 2022) (granting defendant's motion to vacate entry of default and emphasizing defendant's *pro se* status and that the right to self-representation "should not be impaired by a harsh application of technical rules") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

LaMarco's conduct does not suggest that he had a bad faith motive for his failure to answer the Complaint, rather, his conduct demonstrates an "intention and attempt to defend against the action." *Oscilloscope Pictures*, *Inc.*, 2019 WL 2435644, at *7.  LaMarco only filed the motion to vacate forty-nine days after the Clerk of the Court entered the default, which is not enough to persuade the Court that LaMarco is an obstructionist adversary that failed to defend this action.  There is no evidence that Defendants engaged in egregious conduct.  At most, LaMarco's failure to answer the complaint can be described as mere negligence or carelessness, which is insufficient to establish willfulness.  *See Bricklayers*, 779 F.3d at 186 (noting that willfulness requires more than mere negligence).

Judge Tomlinson's 2015 decision in *McCrudden* is particularly instructive, where the

Plaintiff CFTC similarly asserted violations of the CEA against defendant Vincent McCrudden and two corporations. *See McCrudden*, 2015 WL 5944229, at *17. The CFTC alleged that McCrudden acted as an associated person of the two corporations, which acted as unregistered commodity pool operators ("CPO(s)") and were not validly exempt from required registration. *Id.* Throughout the relevant period, the corporations operated as unregistered CPOs and directed the buying and selling of exchange traded commodity futures contracts on behalf of the pool, while McCrudden solicited funds for participation from prospective and actual pool participants. *Id.* McCrudden was incarcerated when he was served a copy of the complaint and was represented by a defense attorney in a separate criminal matter. *Id.* at *3. A formal answer was never filed on behalf of either the corporate defendants or McCrudden by their respective deadlines. *Id.* at *18. For most of the intermittent three-and-a-half years of litigation and at the time of default, McCrudden represented himself and the Court repeatedly warned him that the corporations would not be permitted to proceed on a *pro se* basis. *See id.* at *4, *19.

The court held that McCrudden's default was not willful because although he did not formally answer the complaint, he nevertheless "otherwise defended" the case, and was directly involved in the attempted defense of the CFTC's claims. *Id.* at *20-21. Judge Tomlinson reasoned that McCrudden addressed the CFTC's allegations through his twenty-six (26) correspondences with the court, either by moving to dismiss, oppose, or respond to directives from the court. *Id.* at *19. Moreover, McCrudden consistently defended his positions in his own terms, even though the responses may have been legally deficient, and he was not penalized or punished for his lack of procedural knowledge. *Id.* at *21. The court found that McCrudden took immediate steps to defend himself after becoming aware of the

action, and that the failure to file an answer was a mistake that did not constitute bad faith. *Id.* at *21-22.

There are many striking similarities between LaMarco and *pro se* defendant Vincent McCrudden. LaMarco consistently attended status conferences and has filed numerous letters and motions to the Court, demonstrating that he has not willfully defaulted. Additionally, like *McCrudden*, LaMarco begrudgingly participated in discovery by submitting a request for production, a response to Plaintiff's requests, a status update report, and attended several status conferences. *See id.* at 20 ("[McCrudden] opposed various discovery demands served on him by the CFTC [] although his initial responses lacked any substantive information[.]"); *see also* (DE 75, 79, 83.) LaMarco likely did not understand the legal significance of filing an answer, and as a *pro se* defendant, this Court cannot find that he willfully defaulted for his lack of legal procedural expertise.

Plaintiff additionally contends that LaMarco's claim of being "very clear in seeking a settlement" (DE 117 at 2-3) does not excuse his default because he failed to "demonstrate that at any time he had a good faith or reasonable belief that the case would actually settle." (DE 118 at 7.) However, LaMarco noted in his motion to vacate that the *pro bono* attorney appointed to represent him throughout the settlement negotiations was "unresponsive." (DE 117 at 3.) Indeed, a review of the docket demonstrates that both the CFTC and LaMarco experienced difficulty communicating with the *pro bono* attorney throughout settlement negotiations. (DE 22; DE 23.) Specifically, the Court ordered the attorney to notify the Court as to whether he could comply with the Court's appointment after he failed to respond to several phone calls and an email. (DE 23.)

Additionally, On January 10, 2018, the Court issued an Order instructing the attorney

18

to respond when he failed to return the government's calls and emails from their previous telephone conversation on November 14, 2017, and the CFTC claimed that no progress was made towards a resolution.  (DE 26.)  However, the attorney continued to represent to the Court that he was communicating with LaMarco and making progress regarding a settlement.  (*See* DE 24; DE 28.)  After *pro bono* counsel was relieved, LaMarco notified the Court on April 4, 2018 that his communications with the attorney were limited to three, fifteen minute phone calls, and that it had been seven months since they last met in-person at the MCC.  (DE 37.)  LaMarco should not now be punished by a finding of willfulness for any shortcomings in the settlement negotiations due to the *pro bono* attorney.  This Court cannot say for certain whether LaMarco had a reasonable belief that the case would settle at the time negotiations were in progress.  In any event, at this stage, the Court must resolve any doubt in favor of  LaMarco.  *Enron Oil Corp.*, 10 F.3d at 98.  Accordingly, this factor favors vacatur.

### b.  Meritorious Defenses

The existence of a meritorious defense "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."  *Enron Oil Corp.*, 10 F.3d   Courts in this circuit recognize that the defendant's "allegations are meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense."  *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 339 (S.D.N.Y. 2013) (quoting *Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000)); *see also Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC*, No. 17-cv-9489 (AJN), 2019 WL 1099944, at *3 (S.D.N.Y. Mar. 8, 2019) ("The defaulting defendant need only meet a low threshold to satisfy this factor.").

19

To satisfy this low threshold, a defendant does not need to establish a meritorious defense for each claim. *See Li v. Fleet New York Metro. Reg'l Ctr. LLC*, No. 21-cv-5185 (PKC) (RER), 2022 WL 1666963, at *7 (E.D.N.Y. May 25, 2022). "'The defense need not be ultimately persuasive at this stage,' it need only be enough 'to give the fact finder some determination to make.'" *CFTC v. Musorofiti*, No. 05-cv-3917 (ARR) (JO), 2007 WL 2089388, at *5 (E.D.N.Y. July 17, 2007) (quoting *Am. Alliance Ins. Co., Ltd.*, 92 F.3d at 61)). LaMarco claims that his defense has merit because the *pro bono* attorney that was assigned to aid him in his defense was unresponsive, and the attorney possesses evidence that is material to his defense of the allegations. (*See* DE 117 at 3.) Plaintiff avers that LaMarco's contentions lack "any evidence or underlying facts in support of any meritorious defense" and that he "provides only general, conclusory denials." (DE 118 at 11.) Plaintiff also argues that since LaMarco already pleaded guilty to commodities fraud and wire fraud,[5] that he is "collaterally estopped from denying liability and has no meritorious defenses to present in this civil proceeding" because the same conduct in the related criminal case is at issue in the present matter. (*Id.* at 12.)

LaMarco originally raised several objections to Plaintiff's allegations in his motion to dismiss[6] pursuant to Rule 12(b)(6). (DE 59.) LaMarco argued that he did not solicit potential investors by word of mouth, email, or by the internet, rather it was GDLogix's first initial investor who solicited other individuals that were unknown to LaMarco. (*Id.* at 2.) The first

---

[5] *See United States v. LaMarco*, No. 2:16-cr-433 (DRH) (AKT) (E.D.N.Y. Aug. 19, 2016).

[6] This Court contemplates arguments and factual contentions raised in LaMarco's previous motion to dismiss for failure to state a claim. (DE 59.) The Second Circuit has utilized a defendant's unsuccessful motion to dismiss for failure to state a claim in order to demonstrate a meritorious defense. *See Pecarsky*, 249 F.3d at 173-74.

investor allegedly approached LaMarco after losing his job and asked if they could pool their money together.  (*Id.* at 3.)  According to Defendants, each investor was informed that LaMarco was not a professional trader, and LaMarco had each investor sign a risk disclosure statement prior to any significant losses.  (*Id.* at 2.)  Moreover, in response to the CFTC's claim that LaMarco provided a "Memorandum of Offering" to solicit potential pool participants, LaMarco claimed he never provided investors with a "Memorandum of Offering," and instead provided them a memorandum for understanding forex, so that they could understand how the market works and that it was not used for solicitation purposes.  (*Id.* at 4.)  LaMarco further contend that GDLogix and LaMarco received an approved exemption from 2012 until 2014 because (1) LaMarco received no compensation; (2) only one (1) pool was operated; (3) LaMarco did not advertise or solicit prospective participants; and (4) the pool had less than fifteen (15) participants.  (*Id.*)

Plaintiff argues that Defendants are collaterally estopped from arguing that  LaMarco did not engage in the solicitation of potential investors.  On August 19, 2016,  LaMarco pled guilty to one (1) count of commodities fraud pursuant to 7 U.S.C. §§ 6*o*(1) and 13(a) and 18 U.S.C. §§ 2 and 3551 and one (1) count of wire fraud pursuant to 18 U.S.C. §§ 1343, 2, and 3551, in connection with the same underlying conduct as the present civil action.  *See LaMarco*, No. 2:16-cr-433, DE 6 at 5-6.[7]  LaMarco pled guilty to willfully and knowingly

---

[7] The transcript from LaMarco's allocution provides:

> Count 2, between approximately January 2011 and March 2016, within the Eastern District of New York, while I acted as a commodity pool operator, I knowingly and willfully, by use of electronic mail communications to parties both within New York State and outside of New York State, directly and indirectly employed devices, schemes, and artifices to defraud investors engaged in transactions, practices in courses of business which operated as a fraud, and deceit upon investors by sending monthly statements to investors, falsely reporting the performance of their investments in the commodity pool.

employing schemes to defraud participants and engaged in transactions which operated as a fraud and deceit upon participants. *Id.* at 6. He further admitted to soliciting investments in the commodity pool and making material misrepresentations to investors. *Id.*

"It is well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)); *see also SEC v. Mattera*, No. 11 civ. 8323 (PKC), 2013 WL 6485949, at *7 (S.D.N.Y. Dec. 9, 2013) ("For estoppel purposes, there is no difference between a conviction obtained by a plea, or by a guilty verdict."). A four-part test determines whether a federal criminal conviction has a collateral estoppel effect in a later federal civil action:

> (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986).

In the present civil action, Plaintiff asserts claims for violations of §§ 6*o*(1) and 6(b)(a)(2)(A)-(C), among others. The criminal charges LaMarco faced were made pursuant to § 13(a)(2) of the CEA, which imposes criminal liability for a violation of §§ 6, 6(b), and 6*o*(1). 7 U.S.C. 13(a)(2). Both the criminal and civil actions involved the same issues of whether LaMarco engaged in solicitation and fraud. *See CFTC v. Coats*, No. 3:11-cv-00023 (RJC), 2017 WL 4125300, at *2 (W.D.N.C. Sept. 18, 2017) (finding that defendant was collaterally estopped from relitigating the same issues in a related civil proceeding when defendant

---

*LaMarco*, No.2:16-cr-433, DE 11 at 26.

pleaded guilty to violating 7 U.S.C. § 6(b) and the civil action involved issues of fraudulent solicitation, misappropriation, and false statements violating the CEA); *see also Mattera*, 2013 WL 6485949, at *8-9 (finding that Mattera's prior criminal conviction estopped him from relitigating the same facts pertaining to civil claims under section 10(b) and Rule 10b-5). The issue of whether Defendants engaged in fraudulent solicitation in a scheme to defraud by making material misrepresentations to investors via false monthly statements was actually litigated and decided when LaMarco pleaded guilty in 2016. Such issues were necessary and critical to the criminal guilty plea, and LaMarco presumably had the full and fair opportunity to litigate those facts and issues in the prior proceeding. Thus, LaMarco is estopped from denying that he engaged in the solicitation of funds and made misrepresentations to investors by emailing them false monthly statements.

However, there are issues that were not litigated in the criminal case such as whether LaMarco failed to register as an associated person. Plaintiffs allege causes of action for failure to register as an associated person of a commodity pool operator in violation of Sections 4(k)(2) of the CEA. Construing the facts in LaMarco's favor, as is appropriate at this stage, he could be entitled to a valid exception pursuant to 17 C.F.R. § 4.13(a)(1). The exemption provides that a person is not required to register as a commodity pool operator if (1): (i) "It does not receive any compensation or other payment, directly or indirectly, for operating the pool, except reimbursement for the ordinary administrative expenses of operating the pool;" (ii) "It operates only one commodity pool at a time;" (iii) "It is not otherwise required to register with the Commission. . . .;" and (iv), "Neither the person nor any other person involved with the pool does any advertising in connection with the pool." 17 C.F.R. § 4.13(a)(1)(i-iv).

LaMarco, in his motion to dismiss, which he believed to be a sufficient answer, LaMarco itemized eleven (11) allegations set forth in the complaint and provided his response to each one with multiple subparts.  (DE 59.)  *See Patel*, 2022 WL 2704099, at *6 (noting that general denials in an answer coupled with some underlying facts in motion to vacate are sufficient for a meritorious defense).  Though his motion to vacate does not provide "specific facts" to support his defenses "some leeway must be given to Defendant given his *pro se* status."  *Id.*  LaMarco alleges that his former counsel has evidence that he received a valid exemption pursuant to 17 C.F.R. § 4.13(a)(1) absolving him of the requirement to register as an associated person of a commodity pool operator.  If proven true, LaMarco would be exempt from registration as an associated person.  *See* 17 C.F.R. § 4.13(a)(1).

LaMarco also states that this evidence would show that the *pro bono* court appointed attorney and his criminal defense attorney provided him with ineffective legal assistance, each participant of the pool signed risk disclosure statements, he did not advertise, and a host of other things.  (DE 117 at 3.)  The Court notes that LaMarco did move to compel records from his former attorney (*see* DE 108), which bolsters tracks his argument but does not completely verify his claims.  Nonetheless, given LaMarco's *pro se* status, the very low threshold at this stage both under this factor and under Rule 55(c), and the possibility that providing LaMarco an opportunity to obtain the evidence he seeks may lead to a different disposition than a default would, and resolving doubts in his favor, the Court finds that this factor favors vacatur. *See Alternative Inv. Sols. (Gen.) Ltd. v. Next Up Funding, Inc.*, No. 12-cv-6612 JFK, 2013 WL 417405, at *5 (S.D.N.Y. Feb. 4, 2013) (noting that the Court was not fully persuaded that *pro se* defendant's defenses were meritorious but declining to enter default judgment, which is "the most severe sanction which the court may apply"); *see also Sea Hope Navigation Inc.*,

24

978 F. Supp. 2d at 339 (defendant's "allegations are meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense."). At bottom, LaMarco certainly raises at least a "hint" of a defense sufficient to satisfy this prong.

### c. Prejudice

In considering the prejudice element, the Court looks to "the effect of the delay caused by the defendant's default, such as thwarting plaintiff's recovery or remedy . . . resulting in the loss of evidence, creating increased difficulties of discovery, or providing greater opportunity for fraud and collusion." *Gov't Emps. Ins. Co. v. Anikeyev*, No. 14-cv-3775 (KAM) (SMG), 2016 WL 1275042, at *6 (E.D.N.Y. Mar. 31, 2016) (quoting *Swarna*, 622 F.3d at 142). However, since some delay is inevitable when a motion to vacate default judgment is granted, "delay alone is not a sufficient basis for establishing prejudice." *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)).

Here, the clerk entered default against Defendants on March 23, 2022, and the instant motion was made on May 11, 2022. If Defendants' motion is granted, Plaintiff contends that it will experience numerous increased difficulties in discovery, and that it is highly likely that evidence will be or has already been lost, and the memories of the parties and witnesses are likely to become less reliable, combined with all of the previous difficulties Plaintiff experienced when exchanging discovery with Defendants. (DE 118 at 10.)

Further, Plaintiff cites the diminishing of witnesses and parties' memory and recollection of the facts, which can be a legitimate concern. (*Id.*) However, Plaintiff possesses an abundance of the evidence needed to pursue its claims and Plaintiff will likely substantially use the same evidence presented in the related criminal trial, which is unlikely to be lost or unreliable. (DE 115-3 at 2-4 "Records Reviewed"); *see also McCrudden*, 2015 WL

5944229, at *29 (noting that loss of evidence is unlikely since many of the materials which the government needed to prosecute its case were already in its possession and acquired several years prior).

Additionally, Plaintiff's claims that it would be prejudicial to vacate the entries of default because of the significant amount of time and resources expended by the Court and the CFTC.  (DE 118 at 10 citing *Nana v. Le Viking LLC*, No. 17-cv-928 (CM), 2020 WL 3182769, at *3 (S.D.N.Y. June 15, 2020) (denying motion to vacate default judgment under the more stringent under Rule 60 standard)).  However, litigation costs are an insufficient reason to deny a motion to vacate entry of default.  *See New Falls Corp. v. Soni Holdings, LLC*, No. 19-cv-0449 (ADS) (AKT), 2020 WL 2770922, at *7 (E.D.N.Y. May 8, 2020), *report and recommendation adopted*, 2020 WL 2770015 (E.D.N.Y. May 28, 2020) (citing cases).

Plaintiff further argues it will suffer prejudice because "additional delay will thwart pool participants' recovery and the remedies sought by the CFTC, and provide greater opportunity for LaMarco to commit commodities fraud in the absence of a permanent injunction."  (*Id.* at 9.)  That concern is lessened given the Court's recommendation of a permanent injunction as to GDLogix's, (*see infra* Section II).  The Court is mindful that vacatur could delay Plaintiff's recovery if successful and theoretically result in the loss of some evidence through diminished recollection to the extent it was not already collected for the related criminal case or some inconveniences in conducting additional discovery. But the delays in this case were the result of many factors including various rounds of settlement negotiations, amongst other things, and those factors cannot solely be attributed to LaMarco. On balance, the prejudice factor alone does not strongly weigh against vacatur.

### d.  Equitable Factors

"Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96 (citing *Sony Corp.*, 800 F.2d at 320).   Substantial sums of money at stake may weigh in favor of vacating a default. *See Enron Oil Corp.*, 10 F.3d at 97.  Here, Plaintiff seeks to hold LaMarco liable for restitution in the amount of $862,600, which represents the total amount LaMarco fraudulently solicited, $1,492,965, minus the funds diverted from some pool participants and passed to others in a ponzi scheme, $630,050.  (DE 115 at 19-20.)  And, Plaintiff requests to impose a civil monetary penalty for $2,587,800 plus post-judgment interest.  (*Id.* at 21-22.)  The substantial sums that the CFTC seeks from LaMarco, totaling over three (3) million dollars, strongly weighs in favor of vacating the entry of default.  *See Patel*, 2022 WL 2704099 at *6 (weighing equitable factors in favor of vacating entry of default because (1) defendant was a *pro se* litigant, and (2) the SEC sought injunctive relief and $800,000 in damages plus civil monetary penalties).

Moreover, in consideration that the Second Circuit recognizes that district courts should set aside defaults freely in cases involving *pro se* litigants, the equitable factors weigh in favor of vacatur.  *Enron Oil Corp.*, 10 F.3d at 96; *see also Peoples v. Fisher*, 299 F.R.D. 56, 59 (W.D.N.Y. 2014) ("While courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort."  (quoting *Meehan*, 652 F.2d at 277; *see also Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1982) (noting that default judgment is a weapon of last resort and should only be imposed upon a serious showing of willful default).  Given the strong preference for resolving disputes on the merits, the lack of willfulness or strong prejudice, LaMarco's *pro se*

status, the equitable factors, and resolving any doubts in his favor, the undersigned respectfully recommends the motion to vacate entry of default to be granted as to LaMarco.[8]  *See Enron Oil Corp.*, 10 F.3d at 96 (any doubt "as to whether a default should be granted or vacated" must be "resolved in favor of the defaulting party," and "as a general rule a district court should grant a default judgment sparingly and grant leave to set aside of default freely when the defaulting party is appearing *pro se*").

## II.    Plaintiff's Motion for Default Judgment

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, after the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment.  Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2(b).  The decision to grant a motion for default is left to the discretion of the district court.  *United States v. Dougherty*, No. 15-cv-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016).  A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-cv-1878 (RJD) (JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an

---

[8] In light of this recommendation, the Court deems LaMarco's motion to compel (which was improperly filed as a motion for reconsideration since it was originally denied with leave to renew in light of LaMarco's default, *see* Electronic Order dated May 5, 2022) as moot.  If the Court ultimately vacates his entry of default, LaMarco may then re-file his motion to compel in accordance with the undersigned's individual rules, which require, amongst other things, parties to meet and confer before filing a motion for an order compelling disclosure or discovery.  *See Vaigasi v. Solow Mgmt. Corp.*, No. 1:11-cv-05088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) ("failure to meet and confer . . . in good faith is sufficient reason by itself to deny . . . motion to compel.").  A meet and confer would be especially appropriate here since Plaintiff opposed LaMarco's original motion to compel records from his former *pro bono* attorney, *inter alia*, because LaMarco was in default and Plaintiff was preparing to submit its default judgment so LaMarco "did not need such records to move forward."  (*See* DE 113.)

admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true).

However, the plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The court must therefore ensure that (1) Plaintiff has satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; that (2) Plaintiff's allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84; and that (3) Plaintiff has provided a sufficient basis for determining damages, *see Greyhound Exhibitgroup*, 973 F.2d at 158.

Plaintiff seeks default judgment against Defendants for violating the anti-fraud and registration provisions of the CEA, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6k(2), 6m(1), and 6o(1)(A) and (B). (DE 115 at 1.) Plaintiff also seeks permanent injunctive relief, restitution, and a civil monetary penalty. (*Id*.) Given the undersigned's recommendation as to Defendant's motion for entry of default, the undersigned respectfully recommends that Plaintiff's motion for default judgment be denied as moot as to LaMarco. However, for the reasons stated herein, as to GDLogix, the undersigned recommends granting default judgment. ignoring the default would prejudice Plaintiffs, "as there are no additional steps available to secure relief in this Court." *See Trustees of Bldg. Trades Educ. Benefit Fund v. Romero Elec. LLC,* No. 19-cv-3515 (DRH) (AYS), 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021), *report and recommendation adopted*, 2021 WL 3603613 (E.D.N.Y. Aug. 13, 2021) (entering default judgment in part where corporate

defendant failed to obtain new counsel and noting that "ignoring the default would prejudice Plaintiffs, "as there are no additional steps available to secure relief in this Court.").

### A. **Procedural Compliance**

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion.  E.D.N.Y. Local R. 7.1(a)(1) - (3).  Local Civil Rule 55.2 requires that a party moving for default judgment append to its application the Clerk's certificate of default, a copy of the claim to which no response has been made, a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a default is sought at the last known address of such party with proof of mailing filed with the Court.  E.D.N.Y. Local R. 55.2(b) - (c).  Plaintiff filed the subject motion for default judgment (DE 115), which includes a proposed judgment (DE 115-5), a memorandum of law (DE 115), declaration in support (DE 115-1), a copy of the complaint (DE 115-1), the certificates of default (DE 115-2).

The Court notes that Plaintiff's filing does not appear to include proof of mailing of the motion and supporting papers.  (*See* DE 115.)  However, the Committee Note to Local Civil Rule 55.2(c) provides the rationale behind the requirement of "service of notice of an application for a default judgment upon a party who has not appeared in the action," is that it "is conducive to both fairness and efficiency."  Here, Defendants have appeared in this action, and LaMarco even filed a motion to vacate entry of default after the motion for default judgment was filed. Thus, it is sufficiently clear that LaMarco has notice of the motion for default judgment.  *See Matter of D'Ancona*, No. 19-cv-5492 (EK) (VMS), 2021 WL 4482615, at *2 (E.D.N.Y. May 24, 2021) ("Courts have excused a movant's failure to strictly comply with the Local Civil Rules if a

defendant received fair notice of the motion for default judgment."), *report and recommendation adopted*, 2021 WL 4480676 (E.D.N.Y. Sept. 30, 2021).  Accordingly, the undersigned respectfully recommends that this procedural deficiency should be overlooked under the circumstances.  *See id*.

### B.  Liability

Well-pleaded allegations in a complaint are presumed true when a defendant fails to present a defense to the court.  *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 82 (E.D.N.Y. 2020).   However, "a plaintiff still must demonstrate that the factual allegations set forth in [the] complaint state valid claims to relief."  *Id.* (citing *United States v. Meyers*, 236 F. Supp. 3d 702, 708 (E.D.N.Y. 2017)).  Plaintiff seeks default judgment as to GDLogix for violations of  7 U.S.C. §§ 6b(a)(2)(A)-(C), 6o(1)(A) and (B), and 6m(1).  (DE 115.)  At all times relevant here, LaMarco acted as the principal, officer or agent of GDLogix.  (DE 1 at ¶ 46.)

#### a.   7 U.S.C. §§ 6b(a)(2)(A)-(C), 6o(1)(A) and (B)

A violation of 7 U.S.C. §§ 6b(a)(2)(A)-(C) is established if GDLogix made a material misrepresentation, misleading statement or deceptive omission with scienter.  *See CFTC v. Highland Stone Capital Mgmt., L.L.C.*, No. 1:11-cv-5209, 2013 WL 4647191, at *15 (S.D.N.Y. Aug. 29, 2013).   Plaintiffs allege that as part of their fraud claim that GDLogix made material misrepresentations regarding the profitability of the commodity pool to participants and failed to disclose material facts to them including but not limited to the fact that GDLogix was misappropriating funds from them, (*see* DE 1 at ¶¶ 30-33).  *See CFTC v. Int'l Fin. Servs. (New York), Inc.*, 323 F. Supp. 2d 482, 500-01 (S.D.N.Y. 2004) (statements are material "if there is a substantial likelihood that a reasonable investor would consider the information in making a

decision to invest," and misrepresentations "concerning profit and risk go to the heart of a customer's investment decision and are therefore material as a matter of law.").

LaMarco, on behalf of GDLogix, acted with scienter since he had personal knowledge of the actual profitability of the trades, and status of the pool participants' funds,  (DE 1 at ¶ 36, 38, 44; Amakor Decl. ¶¶ 11, 13-14).   *See Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (noting that scienter can be shown either by "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious behavior or recklessness." (internal quotation marks omitted)).  Misappropriation of the funds by using pool participants' funds to pay personal expenses, (DE 1 at ¶ 3) constitutes a violation of 7 U.S.C. § 6b.  *See Driver*, 877 F. Supp. 2d at 978 ("Soliciting or obtaining funds from investors for trading, then failing to trade the funds while using them for personal or business expenses, is misappropriation . . . .").  And, delivering, or causing to be delivered false account statements, violates 7 U.S.C. § 6b(a)(2)(B). Here, GDLogix sent or caused to be sent, false statements to pool participants,  (DE 1 at ¶¶ 4, 34-37, 52, 62; Amakor Decl. ¶¶ 20-22).  *See, e.g., CFTC v. Int'l Fin. Servs. (New York), Inc.*, 323 F. Supp. 2d 482, 500 (S.D.N.Y. 2004) (finding a violation of the same where defendant issued false or misleading statements).

Moreover, the conduct that violates 7 U.S.C. § 6b also violates 7 U.S.C. § 6o(1), except, the latter does not require scienter for liability, and does require "the use of the mails or any means or instrumentality of interstate commerce" to commit fraud.  *CFTC v. Wright*, 2018 WL 6437055, at *3 (S.D.N.Y. Dec. 7, 2018) (same conduct violates both statutes); *Commodity Trend Serv., Inc. v. CFTC*, 233 F.3d 981, 993 (7th Cir. 2000) (scienter required for 7 U.S.C. § 6o(1)

violation).  Plaintiff sufficiently alleges that GDLogix communicated with its victims through email, and those victims also wired funds to GDLogix.  (DE at 1 ¶¶ 28, 61; Amakor Decl. ¶¶ 13.)

Finally, pursuant to 7 U.S.C. § 6m(1), "[i]t shall be unlawful for any commodity trading advisor or commodity pool operator, unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such commodity trading advisor or commodity pool operator . . . ."  And a commodity pool operator is defined as, in relevant part, "any person engaged in a business that is of the nature of a commodity pool . . . and who solicits, accepts, or receives from others funds, securities, or property . . . for the purpose of trading in commodity interests."  7 U.S.C. § 1a(11).

Here, Plaintiff alleges that GDLogix, violated 7 U.S.C. § 6m(1) because it acted as a commodity pool operator, engaged in a commodity pool type business and, to trade in forex, solicited, accepted, or received from others, funds or property without registering with the CFTC as a commodity pool operator during the January 2011 to March 2016 period ("Relevant Period"),  (*See* DE 1 at ¶¶ 6, 45-46, 60; Amakor Decl. ¶¶ 5a, 9).  *See Wright*, 2018 WL 6437055, at \*4 ("Because WTCG engaged in forex transactions and perpetrated its fraud by mail, email, and telephone, its failure to register also constitutes violations of section 4m(1) of the Act.")  And GDLogix is not an exempt entity – "a United States financial institution, registered broker dealer, financial holding company, or investment bank holding company or an AP of such entities as defined by the Act."  (DE 1 at ¶ 47.)

Accordingly, the well-pleaded allegations in the Plaintiff's complaint support liability for these aforementioned violations and the undersigned respectfully recommends entry of default judgment against GDLogix for violations of 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6o(1)(A) and (B), and 6m(1).

C. **Damages**

Once liability for default is established, the next inquiry is damages. A party's default constitutes a concession of all well pleaded allegations, however, such default "is not considered an admission of damages." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 271 (E.D.N.Y. 2019) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)). Regardless of "the absence of opposition" due to the default of defendant, "the court cannot simply accept a statement of the plaintiff concerning the amount of damages, but rather must be provided with evidentiary proof that establishes the amount of damages." *Century 21 Real Est. LLC v. Team Mates Realty Corp.*, No. 07-cv-4134 (NG) (VVP), 2009 WL 910655, at *5 (E.D.N.Y. Feb. 18, 2009), *report and recommendation adopted*, 2009 WL 890561 (E.D.N.Y. Mar. 31, 2009). Although "court[s] must ensure that there is a basis for the damages specified in a default judgment, [they] may, but need not, make the determination through a hearing." *Fustok v. Conticommodity Servs., Inc.*, 122 F.R.D. 151, 156 (S.D.N.Y. 1998), *aff'd*, 873 F.2d 38 (2d Cir. 1989).

Plaintiff seeks: (1) a permanent injunction and trading bans, (2) restitution, and (3) a civil monetary penalty. (DE 115 at 17-21.) First, Plaintiff may seek a permanent injunction "[w]henever it shall appear to the Commission that any . . . person has engaged, is engaging, or is about to engage in any act or 15 practice constituting a violation of any provision of this Act or any rule, regulation or order thereunder." 7 U.S.C. § 13a-1(a). But a permanent injunction only requires a *prima facie* showing that GDLogix violated the CEA and is reasonably likely to commit future violations, which can be inferred from GDLogix's past conduct. *See CFTC v. Commodity Inv. Group, Inc.*, No. 1:05-cv-05741, 2006 WL 353466, at *1 (S.D.N.Y. Feb. 11,

34

2006) ("The CFTC is entitled to a preliminary injunction upon a *prima facie* showing that defendants have violated the Act and "that there is a reasonable likelihood that the wrong will be repeated."); *CFTC v. Am. Bd. of Trade, Inc.,* 803 F.2d 1242, 1251 (2d Cir. 1986) ("A district court may properly infer a likelihood of future violations from the defendant's past unlawful conduct.").  In this context, there is no need to establish "irreparable harm or the inadequacy of alternative remedies."  *Commodity Inv. Group, Inc.*, 2006 WL 353466, at *1.

Plaintiff seeks to permanently restrain, enjoin, and prohibit directly or indirectly, GDLogix from:

a.  engaging in conduct in violation of 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6k(2), 6m(1), and 6o(1)(A) and (B);

b.  trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40);

c.  entering into any transaction involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy)) for their own personal account or for any account in which they have a direct or indirect interest;

d.  Having any commodity interests traded on their behalf;

e.  Controlling or directing the trading for, or on behalf of, any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

f.  Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

g.  Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9);

h.  Acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a)), agent, or any other officer or employee of any person or entity registered, exempted from registration or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9); and

i.  Engaging in any business activities related to commodity interests.

(DE 115 at 15-16.)

Put simply, Plaintiff seeks to avoid Defendants' future violations of the CEA.  As already discussed, GDLogix's fraudulent actions violated several sections of the CEA (*see* 7 U.S.C. §§ 6b(a)(2)(A)- (C), 6m(1), and 6o(1)(A) and (B)).  Plaintiff argues that LaMarco, on GDLogix's behalf, made efforts to conceal those actions from the victims, which "makes it reasonably likely that Defendants will commit additional violations of the Act unless restrained by this Court." (DE 115 at 14.)  Given the Plaintiff's well-pleaded allegations, the intentional repeated violations of the CEA on behalf of GDLogix's and the finding of liability for those violations, as well as Defendants' persistent arguments to the contrary, the Court finds Plaintiff has made a *prima facie* showing sufficient to obtain its requested relief.  *See SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir.1975) ( "commission of past illegal conduct is highly suggestive of the likelihood of future violations"); *Am. Bd. of Trade, Inc.,* 803 F.2d at 1251 (finding no abuse of discretion in entering permanent injunction where the "cold record" showed the need for an injunction given defendants persistent contentions regarding liability showed no confidence they would not strike again); *Commodity Inv. Group, Inc.*, 2006 WL 353466, at *2 (finding that the "far from overwhelming" evidence regarding defendants' violations met the "minimal requires for a *prima facie* showing of material misrepresentations" in violation of the CEA and the reasonable likelihood that they would be repeated, and entering a preliminary injunction to enjoin further violations accordingly).

Second, restitution is appropriate since the Court may order "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)." 7 U.S.C. § 13a-1(d)(3)(A).  To calculate the restitution owed, the Court looks to  corpus between the monetary gain and the amount returned to customers already.  *See Wright*, 2018 WL

6437055, at *4 (awarding the difference between illegally obtained gains and money returned); *see also CFTC v. Leben*, No. 14-cv-866, 2016 WL 7354359, at 9 (D.S.C. Aug. 5, 2016) ("restitution is determined by calculating the total amount of funds solicited from victims of the fraud by a defendant, less any funds returned to the victims by defendant.").

Plaintiff states that pool participants incurred net losses totaling $862,600 dollars -- the $1,492.965 fraudulently solicited minus the $630,050 diverted as part of LaMarco's scheme -- as a result of Defendants' conduct. (*See* DE 1 at ¶¶ 1-3, 36, 42; Amakor Decl. ¶ 19.) Plaintiff requests GDLogix be ordered to turn over any amounts collected to the National Futures Association, "who will serve as monitor and distribute such amounts to Defendants' defrauded participants" (DE 115 at 20.) Plaintiff sufficiently supports this request with supporting documents and the declaration of Michael O. Amakor, a Futures Trading Investigator for the CFTC, who affirms the amounts fraudulently solicited and diverted. (*See* Amakor Decl. ¶ 13 (pool participants deposits and withdrawals chart)). Thus, restitution in the amount of $862,600 dollars is appropriate.

Third, Plaintiff seeks a civil monetary penalty ("CMP") pursuant to 7 U.S.C. § 13a-1(d)(1)(A) (2012), which authorizes such a penalty equal to the higher of three times the monetary gain from each violation of the Act or of $199,094 per violation. *See* 7 U.S.C. § 13a-1(d)(1)(A). In assessing the CMP, the Court has " broad discretion in fashioning an appropriate remedy that is 'rationally related to the offense charged or the need for deterrence" and considers the following factors: "(1) whether Defendants' illegal acts violated core provisions of the Act; (2) whether Defendants acted with scienter; (3) the consequences resulting from Defendants' violations; (4) the financial benefits to Defendants; and (4) the harm to Defendants' customers."

*CFTC v. Yorkshire Grp., Inc.*, No. 13-cv-5323, 2016 WL 8256380, at *6 (E.D.N.Y. Aug. 19, 2016); *CFTC v. Cifuentes*, No. 16-cv-6167, 2018 WL 1904196, at *11 (D.N.J. Apr. 20, 2018).

Plaintiff avers that GDLogix's intentional and egregious actions warrant a significant CMP because Defendants "committed repeated violations of the core antifraud provisions of the [CEA] that caused significant monetary losses to participants." (DE 115 at 21; DE 1 at ¶ 30.) Plaintiffs state that this "multi-year scheme included misrepresentations and omissions, the fabrication and issuance of fraudulent account statements showing fictional profits, and misappropriation of participants' funds for LaMarco's personal trading and other unauthorized purposes." (DE 115 at 21; DE 1 at ¶¶ 1-4, 28, 31-36; Amakor Decl. ¶¶ 12, 17, 20-23.) Therefore, Plaintiff requests a CMP of $2,587,800 against Defendants jointly and severally, which is equal to three times the $862,600 monetary gain resulting from the scheme, and will "will protect the CFTC's regulatory scheme and integrity of the markets, and send a clear message to deter others from engaging in a similar, pervasive fraudulent scheme." (DE 115 at 21.)

"Courts in this circuit have imposed the treble amount in cases involving egregious and intentional fraudulent conduct." *See Wright*, 2018 WL 6437055, at *5. The Court finds that Plaintiff's request for imposition of a CMP of $2,587,800 is appropriate. *See, e.g., id.* (awarding treble damages on motion for default judgment because, as here, defendant "intentionally implemented over a period of years an extensive artifice to obtain clients' money and divert those funds to personal and other unauthorized purposes instead of investing these funds."); *see also U.S. Commodity Futures Trading Comm'n v. 4X Sols., Inc.*, No. 13-cv-2287 (RMB) (FM), 2015 WL 9943241, at *3 (S.D.N.Y. Dec. 28, 2015), *report and recommendation adopted*, 2016 WL 397672 (S.D.N.Y. Jan. 29, 2016) (noting that the CEA authorizes a CMP "of up to the

greater of $140,000 or triple the offender's monetary gain," and awarding triple the amount of disgorgement).

## CONCLUSION

Accordingly, the undersigned respectfully recommends that the motion to vacate the entry of default be granted as to LaMarco, and denied as to GDLogix. Plaintiff's motion for default judgment against GDLogix be granted, and as requested in Plaintiff's proposed order: (1) a permanent injunction be entered as to GDLogix  (*see* DE 115-5 at 15), and (2) default judgment be entered against GDLogix in the amount of $862,600 as restitution, and $2,587,800 as civil monetary penalty, with post-judgment interest[9] accruing at the federal statutory rate from entry of judgment until the judgment is paid in full.

## OBJECTIONS

Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants via first-class mail and via email and promptly file proof of service on ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely

---

[9] "Pursuant to 28 U.S.C. § 1961, '[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.'" *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citation omitted).

to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
        December 27, 2022

                        RESPECTFULLY RECOMMENDED:

                        /S/ *James M. Wicks*

                            JAMES M. WICKS
                        United States Magistrate Judge