**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
U.S. COMMODITY FUTURES TRADING
COMMISSION,

                *Plaintiff*,

              -against-

DANIEL WINSTON LAMARCO,

                *Defendant*.
------------------------------------------------------------X

                      **REPORT AND**
                      <u>**RECOMMENDATION**</u>
                      17-CV-4087 (DG)(JMW)

**A P P E A R A N C E S:**

    Danielle E. Karst, Esq.
    Michael R. Berlowitz, Esq.
    **U.S. Commodity Futures Trading Commission**
    1155 21st Street, N.W.
    Washington, DC 20581
    *Attorneys for Plaintiff*

    **Daniel Winston LaMarco**
    518 Ft. Washington Avenue, BSMT C
    New York, NY 10033
    *Appearing Pro Se*

**WICKS**, Magistrate Judge:

      Plaintiff United States Commodity Futures Trading Commission ("Plaintiff" or "CFTC")

commenced this action on July 10, 2017 seeking equitable relief for alleged violations of the

Commodity Exchange Act ("CEA") committed by Defendants Daniel Winston LaMarco

("LaMarco"), and GDLogix Inc. ("GDLogix"). (ECF No. 1.) *Pro Se* Defendant LaMarco is a

former independent software consultant and the founder of GDLogix, a software consultancy

business. (*Id.*) CFTC specifically alleges: (i) Defendants committed fraud by making material

1

misrepresentations and omissions and misappropriating participants' funds in violation of 7 U.S.C. § 6b(a)(2)(A)-(C) ("Count I"); (ii) Defendants committed fraud as a commodity pool operator ("CPO") and associated person ("AP") of a CPO in violation of 7 U.S.C § 6*o*(1)(A) and (B) ("Count II"); (iii) Defendants failed to register as a CPO in violation of 7 U.S.C. § 6m(1) ("Count III"); and (iv) Defendant LaMarco failed to register as an AP of a CPO in violation of 7 U.S.C. § 6k(2) ("Count IV") (ECF No. 1.)

On December 27, 2022, the undersigned recommended entry of default judgment against GDLogix for violations of 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6o(1)(A) and (B), and 6m(1) (ECF No. 119), and the Hon. Diane Gujarati subsequently entered default judgment against GDLogix Inc. on those claims. (ECF No. 124.) Now before the Court, on referral from Judge Gujarati, is CFTC's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 on Counts I and II as against Defendant LaMarco (*see* ECF Nos. 1, 150, 152; Electronic Order dated November 21, 2023), which is opposed by LaMarco (ECF No. 151). For the reasons stated herein, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (ECF No. 150) on Counts I and II be **GRANTED**.

## **BACKGROUND**

### I.    **Factual Background**

The following facts are drawn from the parties' Local Rule 56.1(a) Statements and are uncontested unless otherwise noted.[1]

---

[1] Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement throughout this Report and Recommendation means that the Court has deemed the underlying factual allegation undisputed. Any citation to a Rule 56.1 statement incorporates by reference the documents cited in it. Where relevant, however, the Court may cite directly to an underlying document.  The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal.  *See Stewart v. Fashion Inst. of Tech.,* No. 18-cv-12297 (LJL), 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("'[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record.'") (quoting *Knight v. N.Y.C. Hous. Auth.*, No. 03 Civ. 2746 (DAB), 2007 WL 313435, at *1 (S.D.N.Y. Feb.

LaMarco is an independent software consultant currently incarcerated in federal prison in Manhattan, New York. (ECF No. 150-2 at ¶ 18.) On August 19, 2016, the U.S. Attorney's Office for the Eastern District of New York charged LaMarco with one count of wire fraud in violation of 18 U.S.C. §§ 1343, 2 and 3551 *et seq.*, and one count of commodities fraud in violation of 7 U.S.C. §§ 6*o*(1) and 13(a)(2). (*Id.* at ¶ 7); *see also United States v. LaMarco*, No. 2:16-cr-433 (E.D.N.Y. Aug. 19, 2016). The Government alleged that from January 2011 through March 2016, LaMarco, individually and as agent and officer of GDLogix, fraudulently solicited and received funds from a Commodity Pool (or the "Pool") comprised of 13 individual investors who invested approximately $1,492,650 with LaMarco in the Pool (hereafter the "Fraudulent Scheme"). (ECF No. 150-2 at ¶ 8.)

## A.    The Fraudulent Scheme

Specifically, the Government alleged – and the CFTC continues to allege[2] – that LaMarco conducted the Fraudulent Scheme by word of mouth, email, the Internet, the use of mails and other means, solicited and accepted $1,492,650 from the pool participants on behalf of GDLogix. (*Id.* at ¶ 21.) LaMarco solicited participants by falsely representing to them that he was a profitable trader and touting the purported safety of his margined or leveraged retail foreign currency (hereafter,

---

2, 2007)); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything."). Further, to the extent a party improperly interjects arguments and/or immaterial facts in response to facts asserted by the opposing party, and does not specifically controvert such facts, the Court disregards those statements. *See McFarlane v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012)).

[2] CFTC's recitation of the Fraudulent Scheme on summary judgment – although disputed by LaMarco (*see* ECF No. 151) – is identical to the facts set forth in LaMarco's criminal case and the allegations asserted in the Complaint. (*See* ECF No. 150-2 at ¶ 14; *United States v. LaMarco*, No. 2:16-cr-433 (E.D.N.Y. Aug. 19, 2016); ECF No. 1.)

"forex") investment strategy[3] and the success of his personal investments in forex contracts. (*Id.* at ¶ 22.) LaMarco omitted material facts in his solicitations to actual and prospective pool participants, including but not limited to failing to disclose that he was misappropriating participants' funds, that no trading took place on behalf of participants, and that he was losing money trading retail forex in his personal accounts. (*Id.* at ¶ 23.) LaMarco provided potential participants with a document entitled, "GDLogix Memorandum of Offering," which indicated that participants' money would be placed in the Pool operated by GDLogix. (*Id.* at ¶ 24.)

CFTC alleges that in January 2011 LaMarco solicited his first two participants and received $25,000 from them to trade forex on their behalf. (*Id.* at ¶ 25.) These two participants provided LaMarco with their funds based on his verbal representations concerning the success of his personal investments in forex. (*Id.*) Subsequently, LaMarco encouraged these two participants to invest additional funds with him from proceeds of the participants' home equity loan and additional funds totaling $465,000. (*Id.*) LaMarco deposited participants' funds into a GDLogix bank account at J.P. Morgan Chase, as well as two personal bank accounts at J.P. Morgan Chase. (*Id.* at ¶ 26.) All of these bank accounts were opened by LaMarco and under his control. (*Id.*) LaMarco then transferred approximately $1.3 million of the $1,492,650 of pool participants' funds to two personal trading accounts LaMarco opened in his name at registered futures commission merchant Gain Capital. (*Id.* at ¶ 27.) LaMarco used participants' funds to trade in his personal trading accounts but did not conduct any trading for, or on behalf of, the Pool. (*Id.*) LaMarco suffered significant trading losses in his personal trading accounts and lost the majority of

---

[3] The CFTC asserts from January 2011 through March 2016, Defendant LaMarco, individually and as agent and officer of GDLogix, fraudulently solicited and accepted $1,492,650 from 13 individuals to trade off-exchange leveraged or margined retail foreign currency, or "forex" contracts in a commodity pool operated by Defendants in violation of the CEA. (*Id.* at ¶ 1.)

participant's funds through his unprofitable trading. (*Id.* at ¶ 28.) Gain Capital closed both of LaMarco's personal trading accounts in April 2016. (*Id.*)

CFTC asserts LaMarco also misappropriated participants' funds by returning $630,050 to certain pool participants as purported trading "profits" in the nature of a "Ponzi" scheme. (*Id.* at ¶ 29.) LaMarco lost the remaining funds by trading in his personal trading accounts or using the funds to pay his personal expenses. (*Id.*) LaMarco proximately caused participants to incur net losses totaling $862,600, which reflects the total funds he fraudulently solicited and accepted ($1,492,965), minus the funds he diverted from some participants and passed to other participants in the manner of a "Ponzi" scheme ($630,050). (*Id.*) LaMarco concealed his misappropriation of participants' funds by providing pool participants with false account statements reflecting fabricated data (the "Monthly Statements") (*Id.* at ¶ 31.) The Monthly Statements purported to provide the participants with a monthly statement of the pool's account activity, including profits, losses, and net account balances. (*Id.*) The Monthly Statements falsely represented to participants that their accounts had increased in value, showing profits rather than losses, or, for a few months, showing small losses that were less than the actual monthly losses. (*Id.* at ¶ 32.) The false information set forth in the Monthly Statements induced additional investments from participants who believed that LaMarco's representations were accurate and kept existing participants from withdrawing their funds. (*Id.*)

Finally, CFTC asserts by late 2015, LaMarco had lost nearly all of the funds he had misappropriated from participants through unprofitable trading in his personal accounts and had spent the rest on personal expenses. (*Id.* at ¶ 33.) By January 2016, LaMarco represented to participants in the Monthly Statements and other communications that the total value, in aggregate, of the Commodity Pool had increased to over $1.79 million. (*Id.* at ¶ 34.) By March 2016, LaMarco

stopped emailing participants fabricated Monthly Statements and did not respond to email and telephone inquiries from participants regarding their invested funds. (*Id.* at ¶ 35.)

**B.    LaMarco's Conviction and Guilty Plea**

On August 19, 2016, LaMarco pled guilty to both the wire fraud and commodities fraud charges. (*Id.* at ¶ 11.) The Plea Agreement was supported by a factual basis as the Court determined. (*Id.*) LaMarco agreed to pay restitution to victims in the amount of $872,600 and consented to a forfeiture money judgment of $862,600. (*Id.*) At his plea allocution, with respect to the wire fraud count, LaMarco admitted:

> On Count 1, between approximately January 2011 and March 2016, within the Eastern District of New York, I knowingly and intentionally devised a scheme to defraud investors and to obtain money from them by means of materially false and fraudulent pretenses and representations. For the purpose of executing such scheme, I e-mailed investors monthly statements that willfully, falsely reported that the investments were increasing in value when, in fact, the investments were decreasing in value.

(*Id.* at ¶ 12.) Further, at his pea allocution, with respect to the commodities fraud count, LaMarco admitted:

> Count 2, between approximately January 2011 and March 2016, within the Eastern District of New York, while I acted as a commodity pool operator, I knowingly and willfully, by use of electronic email communications to parties both within New York State and outside of New York State, directly and indirectly employed devices, schemes, and artifices to defraud investors engaged in transactions, practices in courses of business which operated as a fraud, and deceit upon investors by sending monthly statements to investors, falsely reporting the performance of their investments in the commodity pool.

(*Id.* at ¶ 13.) LaMarco's conviction and guilty plea conclusively established the facts alleged by the Government concerning the wire fraud and commodities fraud counts. (*Id.* at ¶ 14.) At his August 13, 2019, Resentencing, the Court resentenced LaMarco to time served of twenty-seven (27) months, and ordered that he pay $872,600 in restitution and $862,600 in forfeiture as set forth in the initial judgment. (*Id.* at ¶ 16.) The Court found again LaMarco guilty of wire fraud and commodities fraud:

In previous proceedings in this matter a determination of guilt was made that you are guilty of the following crimes: As to Count One, wire fraud, a Class C felony. As to Count Two, commodities fraud, a Class C felony. *Based on that determination of guilt, it is now the judgment of this court, again as I did previously, finds that you are guilty of these two crimes.*

(*Id.*) (emphasis in original).

## II.   <u>Procedural History</u>

Based on these facts, on July 10, 2017, the CFTC filed a civil Complaint in this Court alleging: (i) Defendants committed fraud by making material misrepresentations and omissions and misappropriating participants' funds in violation of 7 U.S.C. § 6b(a)(2)(A)-(C) ("Count I"); (ii) Defendants committed fraud as a CPO and AP of a CPO in violation of 7 U.S.C § 6*o*(1)(A) and (B) ("Count II"); (iii) Defendants failed to register as a CPO in violation of 7 U.S.C. § 6m(1) ("Count III"); and (iv) Defendant LaMarco failed to register as an AP of a CPO in violation of 7 U.S.C. § 6k(2) ("Count IV") (ECF No. 1.)  The CFTC sought to enjoin the Defendants' unlawful acts and practices; to compel their compliance with the Act and the Regulations thereunder; and to enjoin them from engaging in any commodity related activity. (*Id.* at ¶ 2.)  In addition, the CFTC seeks civil monetary penalties ("CMP") for each violation of the Act, and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate. (*Id.*)

The Complaint alleges that in January 2011, LaMarco, who acted both individually, and as an agent and officer of GDLogix, began to solicit individuals ("Pool Participants") to trade forex contracts in a commodity pool.  (*Id.*)  LaMarco provided a "Memorandum of Offering" to each of the pool participants which indicated that the funds would be placed in a commodity pool managed by GDLogix.  (*Id.*)  The CFTC asserts that: (i) LaMarco made "material and false"

misrepresentations to Pool Participants by sending fraudulent monthly statements to them purporting to be profitable, (*Id.*), and (ii) LaMarco failed to disclose to Pool Participants the fact that neither he nor GDLogix were registered with the CFTC, as required, while engaged in the solicitation of funds for the purpose of participation in a commodity pool. (*Id.*; ECF No. 115-3.)

As a result of his actions, the Complaint alleges LaMarco accumulated a total of $1,492,650 from thirteen individuals from New York, Connecticut, Massachusetts, and Ohio. (ECF No. 1.) Plaintiff further alleges LaMarco deposited approximately $1.3 million into two personal trading accounts in his name and lost nearly all the funds by April 2016. (ECF No. 1.) Plaintiff contends that Defendants violated certain provisions of the Commodity Exchange Act, particularly 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6k(2), 6m(1), and 6*o*(1)(A) and (B). (*Id.*) Thus, Plaintiff filed the instant action against Defendants on July 10, 2017, and served a copy of the Summons and Complaint upon both Defendants on August 2, 2017. (ECF No. 15; ECF No. 16.) LaMarco accepted service of process on behalf of himself and GDLogix while incarcerated at the New York Metropolitan Correctional Center ("MCC"). (ECF Nos. 15, 16.) Answers to the Complaint were due on August 23, 2017, pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i). (ECF Nos. 15, 16.)

On August 7, 2017, the Honorable A. Kathleen Tomlinson issued an Order that the Court would be seeking to appoint an attorney from the Eastern District of New York's *Pro Bono* panel to represent LaMarco (who was incarcerated at that time) and GDLogix throughout settlement negotiations. (ECF No. 18.) Judge Tomlinson held all other aspects of the case in abeyance until further Order of the Court. (*Id.*) *Pro bono* counsel, Robert J. Del Col, was appointed to represent LaMarco on September 11, 2017, for the limited purpose of negotiating a settlement with Plaintiff. (ECF Nos. 20, 21.) Once it became clear that the case would not settle after nearly five months of negotiations, Judge Tomlinson relieved the *pro bono* counsel from his temporary

appointment on March 2, 2018, and resumed discovery proceedings. (ECF No. 33.) Pursuant to the March 2, 2018 Order, if the Court did not receive notice of newly retained counsel by April 6, 2018, LaMarco would be required to proceed on a *pro se* basis, and if GDLogix failed to obtain counsel by that date, Plaintiff would be permitted to seek a default judgment against it. (*Id.*) The Court further ordered that an Answer to the Complaint must be filed by Defendants on April 30, 2018. (*Id.*)

GDLogix failed to retain counsel by the deadline, and pursuant to Fed. R. Civ. P. 55(a), Plaintiff requested a Certificate of Default from the Clerk of the Court, which was granted and entered by the Clerk of the Court on April 19, 2018. (ECF Nos. 41, 43.) Subsequently, LaMarco requested an extension to file the Answer, which was granted by the Court on May 2, 2018, and the new deadline was set for June 30, 2018. (ECF No. 47; Electronic Order dated May 2, 2018.) Plaintiff also requested entry of default against LaMarco in his individual capacity on May 2, 2018, but it was denied given the deadline extension to file an Answer. (ECF No. 49; Electronic Order dated May 4, 2018.) On May 7, 2018, the Court vacated the Certificate of Default against GDLogix *sua sponte* for the purpose of appointing another attorney to represent Defendants and negotiate a potential settlement. (ECF No. 51.) All deadlines were stayed pending settlement negotiations. (*Id.*)

Appointed counsel notified the Court on July 10, 2018, that after speaking with LaMarco, they believed settlement was highly unlikely until LaMarco's criminal appeal was resolved. (DE 56.) August 1, 2018, LaMarco moved to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 59.) On September 13, 2018, the Court lifted the stay imposed on May 7, 2018, so that Defendants could be given the opportunity to file an Answer. (Electronic Order Dated Sept. 13, 2018.) The Hon. Arthur D. Spatt, the District Judge

at the time, denied the motion to dismiss in its entirety on September 5, 2019. (ECF No. 84.) Plaintiff attempted to serve a copy of the Order denying the motion to dismiss, but the mailings were returned by the MCC as undeliverable because LaMarco was no longer at the facility. (ECF Nos. 85, 86.) LaMarco did not receive a copy of the Order until February 13, 2020. (ECF No. 87.) Subsequently, the case was reassigned to the Hon. Diane Gujarati and the undersigned. (Electronic Orders dated Dec. 10, 2020, and Nov. 19, 2021.)

Discovery proceedings continued pursuant to the undersigned's scheduling order, and a status conference was held on January 19, 2022. (ECF No. 100.) The Court reminded LaMarco that as he was previously advised by Judge Tomlinson, GDLogix as a corporate entity may not proceed *pro se* and that the entity must retain counsel. (*Id.*) LaMarco advised the Court that he was in the process of obtaining counsel to represent himself and GDLogix. (*Id.*) The Court gave LaMarco until February 18, 2022, for counsel to file a Notice of Appearance, and forewarned LaMarco that this would be the final extension of time for him to obtain counsel. (*Id.*) On February 25, 2022, LaMarco advised the court that he would not retain counsel for either himself or GDLogix, and on March 10, 2022, the Court allowed Plaintiff to renew its request for certificates of default against LaMarco and GDLogix. (ECF No. 104; Electronic Order Dated March 10, 2022.) Plaintiff requested the Clerk of the Court for Certificates of Default the following day. (ECF No. 107.) On March 14, 2022, LaMarco filed a Motion to Compel the previously appointed *pro se* counsel Del Col to release all the records regarding the related criminal case,[4] as well as records pertaining to the present civil action. (ECF No. 108.) The Clerk of the Court entered defaults against LaMarco and GDLogix pursuant to Fed. R. Civ. P. 55(a) on March 23, 2022. (ECF No. 110.)

---

[4] *See generally, Lamarco*, 2017 WL 924791 (E.D.N.Y. Feb. 16, 2017).

Subsequently, on May 5, 2022, the Court denied the Motion to Compel with leave to renew, but only if made in conjunction with a Motion to Vacate the Certificate of Default. (Electronic Order dated May 5, 2022.)[5] On May 9, 2022, Plaintiff filed a motion for default judgment against Defendants pursuant to Fed. R. Civ. P. 55(b) and E.D.N.Y. Local Rule 55.2(b) for Defendants' failure to file an answer or otherwise respond to the Complaint, and for Defendants' alleged violations of the anti-fraud and registration provisions of the CEA, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6k(2), 6m(1), and 6*o*(1)(A) and (B). (ECF No. 115.) LaMarco filed a motion to vacate the entry of default, and a motion for reconsideration of motion to compel on May 11, 2022. (ECF Nos. 116, 117.) LaMarco asserts that the *pro se* counsel failed to respond to his "numerous attempts at obtaining relevant evidence that is crucial to the defense of this action." (*Id.*) Judge Gujarati then referred Plaintiff's motion for default judgment (ECF No. 115) and Defendant's motion to vacate the clerk's entry of default (ECF No. 117), to the undersigned for a report and recommendation ("R&R"). (Electronic Order dated May 11, 2022; Electronic Order dated May 12, 2022.)

On December 27, 2022, the undersigned issued an R&R to Judge Gujarati (ECF No. 119) recommending that: (i) Plaintiff's Motion for Default Judgment (ECF No. 115) be granted as against Defendant GDLogix, only, for violations of 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6*o*(1)(A) and (B), and 6m(1), and denied as moot as against LaMarco; and (ii) LaMarco's Motion to Vacate be granted as to LaMarco. Relevant here, the undersigned found:

---

[5] LaMarco renewed his Motion to Compel Del Col to release all the records regarding the instant action and the related criminal case (*see* ECF No. 134) on September 9, 2023, following directives from the Court (*see* ECF No. 119 at 28), which the undersigned denied on November 3, 2023. (*See* ECF No. 149.) LaMarco sought to compel Del Col to release to him: (i) emails from Pool Participants to LaMarco; (ii) emails between LaMarco and the law firm Gottlieb & Janey; (iii) charts, graphs, and analysis performed by Pool Participants that were sent to LaMarco; (iv) all brokerage account information and statements; (v) all Risk Disclosure documents signed by Pool Participants; and (vi) all statements, emails police records regarding "LaMarco's estranged wife's pattern of domestic and child abuse and neglect, including statements from therapists and medical personnel." (ECF No. 134.) The undersigned ultimately determined there was "little likelihood the requested documents containe[d] information relevant to this case." (ECF No. 149 at 14.)

In the present civil action, Plaintiff asserts claims for violations of §§ 6*o*(1) and 6(b)(a)(2)(A)-(C), among others. The criminal charges LaMarco faced were made pursuant to § 13(a)(2) of the CEA, which imposes criminal liability for a violation of §§ 6, 6(b), and 6*o*(1). 7 U.S.C. 13(a)(2). Both the criminal and civil actions involved the same issues of whether LaMarco engaged in solicitation and fraud. The issue of whether Defendants engaged in fraudulent solicitation in a scheme to defraud by making material misrepresentations to investors via false monthly statements was actually litigated and decided when LaMarco pleaded guilty in 2016. Such issues were necessary and critical to the criminal guilty plea, and LaMarco presumably had the full and fair opportunity to litigate those facts and issues in the prior proceeding. Thus, LaMarco is estopped from denying that he engaged in the solicitation of funds and made misrepresentations to investors by emailing them false monthly statements.

\*\*\*

LaMarco, on behalf of GDLogix, acted with scienter since he had personal knowledge of the actual profitability of the trades, and status of the pool participants' funds. Misappropriation of the funds by using pool participants' funds to pay personal expenses constitutes a violation of 7 U.S.C. § 6b. And, delivering, or causing to be delivered false account statements, violates 7 U.S.C. § 6b(a)(2)(B).

(ECF No. 119 at 22-23, 32) (internal citations omitted) (cleaned up).

The R&R was adopted in full by Judge Gujarati on March 14, 2023, who entered default judgment against GDLogix in the amount of $862,600 as restitution and $2,587,800 as a CMP, with post-judgment interest accruing at the federal statutory rate from entry of judgment until the judgment is paid in full. (*See* ECF No. 124.)[6]

---

[6] Judge Gujarati additionally entered a permanent injunction as to GDLogix Inc, preventing GDLogix Inc. and any of its agents from directly or indirectly: 1. Engaging in conduct in violation of 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6k(2), 6m(1), and 6*o*(1)(A) and (B); 2. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40)); 3. Entering into any transaction involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy)) for their own personal account or for any account in which they have a direct or indirect interest; 4. Having any commodity interests traded on their behalf; 5. Controlling or directing the trading for, or on behalf of, any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests; 6. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests; 7. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided in 17 C.F.R. § 4.14(a)(9); 8. Acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a)), agent, or any other officer or employee of any person or entity registered, exempted from registration or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9); and 9. Engaging in any business activities related to commodity interests. (ECF No. 124 at 5.)

On August 9, 2023, CFTC informed the Court that they intended to seek summary judgment. (ECF No. 129.) On October 13, 2023, the undersigned subsequently granted LaMarco leave to file a late answer and deemed ECF No. 133 as Defendant LaMarco's Answer to the Complaint. (*See* Electronic Order dated October 13, 2024.) On November 16, 2023, CFTC filed its Motion for Summary Judgment against Defendant LaMarco on Counts I and II of the Complaint pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, along with a permanent injunction, restitution, and a CMP. (ECF No. 150.) On November 21, 2024, Judge Gujarati referred the Motion to the undersigned for an R&R. (*See* Electronic Order dated November 21, 2204.) LaMarco filed his Response in Opposition on December 11, 2023 (ECF No. 151), and the CFTC filed its Reply in Support on January 17, 2024 (ECF No. 152).

## III.    The Parties' Contentions

### A.    CFTC's Motion for Summary Judgment

In support of its Motion for Summary Judgment, the CFTC argues: (i) LaMarco is collaterally estopped from re-litigating the factual issues concerning his fraudulent activities; (ii) LaMarco committed fraud by making material misrepresentations and omissions and misappropriating participants' funds in violation of 7 U.S.C. § 6b(a)(2)(A)-(C); (iii) LaMarco committed fraud as a CPO in violation of 7 U.S.C. § 6*o*(1); (iv) LaMarco failed to provide any facts or evidence to support his affirmative defenses; (v) a permanent injunction is warranted; and (vi) restitution and a CMP are warranted. (ECF No. 150-4.)

With respect to the CFTC's first claim, the CFTC argues that "'LaMarco is estopped from denying that he engaged in the solicitation of funds and made misrepresentations to investors by emailing them false monthly statements.'" (*Id*. at 14) (quoting ECF No. 119 at 23.) According to the CFTC, "the Second Circuit recognizes that '[i]t is well-settled that a criminal conviction,

whether by jury verdict or guilty plea, constitutes estoppel in favor of the [plaintiff] in a subsequent civil proceeding as to those matters determined by the judgment in the criminal.'" (*Id*. at 14-15.) The CFTC maintains that federal criminal convictions give rise to collateral estoppel in federal civil actions where: (i) the issues in both proceedings are identical, (ii) the issue in the prior proceeding was litigated and decided, (iii) there was a full and fair opportunity for litigation in the prior proceedings, and (iv) the issue previously litigated was necessary to support a valid and final judgment on the merits. (*Id*. at 15.)

The CFTC argues that all four elements of the collateral estoppel test are established in this case with respect to LaMarco's violations of the CEA's anti-fraud provisions. (*Id*. at 16.) *First*, the CFTC argues that it is undisputed that the facts and issues underlying the criminal charges to which LaMarco pled guilty are the same facts and issues underlying the CFTC's fraud claims against LaMarco in this case, as "'[b]oth the criminal and civil actions involved the same issues of whether LaMarco engaged in solicitation and fraud.'" (*Id*.) (quoting ECF No. 119 at 22.) The CFTC further asserts that LaMarco pled guilty to fraud by a CPO, a violation of 7 U.S.C. ¶¶ 6*o*(1) and 13(a)(2). (ECF No. 150-4 at 16.) The CFTC argues that the criminal fraudulent scheme to which LaMarco pled guilty is the same fraudulent scheme that is alleged in the instant matter and both cases involve the exact same material misrepresentations, material omissions, and misappropriation of customer funds. (*Id*. at 16.) That is, "'[t]he issue of whether [LaMarco] engaged in fraudulent solicitation in a scheme to defraud by making material misrepresentations to investors via false monthly statements was actually litigated and decided when LaMarco pleaded guilty in 2016.'" (*Id*.) (quoting ECF No. 119.)

*Second*, the CFTC argues that LaMarco, represented by counsel, signed the Plea Agreement which lays out the same facts alleged in the CFTC Complaint and that his guilty plea

fully resolved all of the issues and established all of the facts regarding his fraudulent solicitation, misappropriation, and false statements in the criminal proceeding. (ECF No. 150-4 at 16-17.) The CFTC maintains this is the exact factual basis that underlies the claims in this action. (*Id*.) *Third*, the CFTC argues, as previously articulated by the undersigned, that LaMarco "had a full and fair opportunity to litigate these issues and facts" in the criminal proceeding, and he was represented by competent defense counsel throughout the proceeding. (*Id*.) (quoting ECF No. 119.) LaMarco signed the Plea Agreement, which included the following statements: "I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily." (ECF No. 150-4 at 17) (quoting Plea Agreement at 11 (Amakor Decl. II Exhibit B.)) The CFTC argues that simply because he entered a guilty plea, rather than being found guilty by way of a verdict, did not diminish LaMarco's opportunity to litigate the merits of the allegations in the criminal proceeding; he simply chose not to do so. (*Id*.)

*Fourth*, the CFTC argues that the facts to which LaMarco admitted and were incorporated in the Plea Agreement formed the basis for his criminal conviction and sentencing and so were critical and necessary to the criminal judgment. (*Id*.) The CFTC reiterates that on August 19, 2016, LaMarco pled guilty and on February 3, 2017, he was sentenced to forty-two months incarceration. (ECF No. 150-4 at 17.) The CFTC argues that, in the Plea Agreement, LaMarco waived his right to contest the conviction or sentence and, therefore, LaMarco should not be permitted to deny the admissions that he made in the criminal proceeding. (*Id*. at 17-18.)

With respect to its second claim, the CFTC argues that LaMarco violated 7 U.S.C. § 6b(a)(2)(A)-(C) because he: (1) made a misrepresentation, misleading statement, or deceptive omission; (2) with scienter; and (3) the misrepresentation was material. (*Id*. at 18-21.) *First*, the CFTC contends LaMarco knowingly made material representations to existing and prospective

pool participants by misrepresenting that: the Commodity Pool had been continuously profitable, the fabricated data sent to pool participants accurately represented the Pool's performance, and LaMarco was an experienced and profitable forex trader with a successful track record. (*Id*. at 19.) The CFTC also asserts that LaMarco failed to disclose material facts to participants, including that he misappropriated their funds and conducted no trading on their behalf. (*Id*.) *Second*, the CFTC argues that LaMarco, individually and as principal and agent of GDLogix, acted with the requisite scienter to violate 7 U.S.C. § 6b because he had personal knowledge of the amount of funds accepted from pool participants, the disposition of those funds, and the profitability of trades purportedly effected on behalf of pool participants. (*Id*. at 20-21.) The CFTC asserts that, when LaMarco represented to pool participants that the Pool had achieved high rates of return and profits, as well as when he issued fabricated statements showing fictitious returns, he knew those representations were false. (*Id*. at 21.) *Third*, the CFTC argues that LaMarco's misrepresentations are material because his misrepresentations regarding the profitability of the Pool and his past success as a forex investor are factors that a "reasonable investor" would consider in making an investment decision. (*Id*. at 19.)

With respect to its third claim, the CFTC argues LaMarco violated 7 U.S.C. § 6*o*(1) because he engaged in fraudulent conduct while acting as an AP of the CPO GDLogix. (*Id*. at 23.) The CFTC asserts that because LaMarco solicited funds for CPO GDLogix, he acted as an AP of the CPO as defined in 7 U.S.C. § 1a(11) and 17 C.F.R. § 1.3. (*Id*. at 22.) The CFTC further reiterates that LaMarco pled guilty to commodities fraud in violation of 7 U.S.C. 6*o*(1) in the parallel criminal proceeding. (*Id*. at 23.) The CFTC additionally asserts that LaMarco admitted in his guilty plea to committing commodities fraud in violation of 7 U.S.C. § 6b by "knowingly and willfully, by use of electronic communications to parties both within New York State and outside of New

16

York State, directly and indirectly employed devices, schemes, and artifices to defraud investors engaged in transactions, practices in courses of business which operated as a fraud, and deceit upon investors by sending monthly statement to investors, falsely reporting the performance of their investments in the commodity pool[,]" and, the same undisputed facts which establish LaMarco violated 7 U.S.C. § 6b(a)(2)(A)-(C)—and to which LaMarco admitted to in the criminal proceeding—demonstrate LaMarco employed a scheme to defraud his commodity pool participants in violation of 7 U.S.C. § 6*o*(1). (*Id*. at 22-23.)

The CFTC maintains LaMarco did not proffer anything to support his seven affirmative defenses ("ADs") numbered 1-3 and 5-8 in his Answer and did not produce any documents during litigation to support these ADs, and, therefore, LaMarco's seven affirmative defenses should all be stricken because they fail as a matter of law or are legally insufficient. (*Id*. at 23.) In addition, the inclusion of his ADs prejudices Plaintiff because they would unnecessarily increase the time, expense, and complexity of a trial. (*Id*.). LaMarco's First and Second ADs, "Good Faith," and "Assumption of Risk," both assert that pool participants were "aware of the risks" because they signed a "Risk Disclosure" document. (*Id*. at 24.) However, the CFTC argues that such an assumption of risk defense is legally deficient because reliance is not an element Plaintiff has to prove to establish fraud under the CEA. (*Id*.) According to the CFTC, LaMarco's Third AD, "Unforeseeable Causes," raised irrelevant personal issues regarding LaMarco's wife having "numerous affairs," and makes serious and unfounded claims against Plaintiff's counsel. (*Id*.) The CFTC asserts that LaMarco did not provide any evidence supporting these false, immaterial, and scandalous accusations which are prejudicial to Plaintiff and its counsel and should therefore be stricken. (*Id*. at 24-25.) The CFTC further asserts that LaMarco's Fifth AD, "Estoppel," is inadequately pled and is a legally insufficient basis for precluding Plaintiff from prevailing on its

claims because it states only that "[t]he complaint by its acts and omissions is estopped from asserting any of its claims upon which it seeks relief." (*Id*. at 25.) The CFTC argues that his Sixth AD, "Failure to Name and Join Indispensable and Necessary Parties," fails because: (i) LaMarco has neither provided any indication as to why pool participant James Walsh needs to be joined; and (ii) whether others may have violated the CEA has no bearing on LaMarco's liability for his fraud and misappropriation. (*Id*.) The CFTC further argues that LaMarco's Seventh AD, "Right to Assert Additional Affirmative Defenses," is improper and a legally insufficient basis for precluding Plaintiff from prevailing on its claims because it is not in fact an affirmative defense at all. (*Id*. at 26.) The CFTC asserts that LaMarco's Eighth AD, "Violation of Attorney Client-Privilege," should be stricken because this Court has previously struck such baseless accusation in LaMarco's Reply and concluded that "'LaMarco has not provided any evidence supporting these allegations, which, even if true, are irrelevant to this case and are highly prejudicial to Plaintiff and to its counsel's character.'" (*Id*. at 26.) (quoting ECF No. 149.)

Finally, the CFTC argues a permanent injunction, restitution, and a CMP are warranted in this case. (ECF No. 150-4 at 27-30.) *First*, the CFTC argues that a permanent injunction is warranted because they have demonstrated *prima facie* showing that Defendants have violated the CEA and that there is reasonable likelihood that the wrong will be repeated. (*Id*. at 27.) The CFTC asserts that LaMarco's fraudulent conduct poses a significant threat to the integrity of the futures markets as he repeatedly committed core violations of the Act – including lying to and delivering false statements to participants about his trading activities, investment performance, and misappropriation of participants' funds. (*Id*. at 27-28.) Further, the CFTC argues that there is a reasonable likelihood that he will engage in a future violation given the nature of the past conduct, the high degree of scienter involved, LaMarco's failure to accept responsibility, and a lack of any

18

constraints on future misconduct. (*Id.*) *Second*, the CFTC argues that LaMarco's illegal conduct proximately caused participants to incur net losses totaling $862,600, which reflects the total funds he fraudulently solicited ($1,492,965), minus the funds he diverted from some participants and passed to other participants in the manner of a "Ponzi" scheme ($630,050). (*Id.* at 30.) Accordingly, the CFTC requests the Court order LaMarco to pay restitution of $862,600, which is equal to participants' net losses, together with post-judgment interest thereon as set forth below. (*Id.*) The CFTC recognizes that satisfaction of any part of LaMarco's criminal restitution obligation in United States v. LaMarco, and/or Defendant GDLogix's previously ordered restitution obligation in this case shall result in satisfaction of LaMarco's restitution obligation. (*Id.*)

*Third*, the CFTC argues LaMarco's fraudulent conduct warrants the imposition of a significant CMP because he committed repeated violations of the core antifraud provisions of the CEA that caused significant monetary losses to thirteen pool participants. (*Id.* at 31.) The multi-year scheme included misrepresentations and omissions, fabrications and issuance of fraudulent account statements showing fictional profits, and misappropriation of participants' funds for LaMarco's personal trading and other unauthorized purposes. (*Id.*) The CFTC requests that the Court impose a CMP of $2,587,800 against LaMarco, which is equal to three times his monetary gain of $862,600, together with post judgment interest. (*Id.*) The CFTC asserts that issuing this penalty will protect the CFTC's regulatory scheme and integrity of the markets and send a clear message to deter others from engaging in similar fraudulent conduct. (*Id.* at 31-32.)

### B.  **LaMarco's Response in Opposition**

In opposition, LaMarco argues: (i)  collateral estoppel should not apply because he was provided ineffective assistance of counsel during his prior criminal proceeding; (ii) the CFTC

failed to join indispensable parties (James Walsh & Jack Lemmerman); (iii) he was validly exempt from registering with the CFTC as a commodity pool; (iv) the CFTC wrongfully utilized the Net Asset Value ("NAV") accounting in their Declarations and should have correctly used the GAAP method of Cash Basis; (v) the CFTC has withheld Broker Statements from 2011 in violation of the *Brady* rule; (vi) the calculation of trading losses and restitution is incorrect; and (vii) that the Court should take into consideration the following when formulating its penalty: that during the relevant period, LaMarco's life was traumatic and that there was no monetary gain by him. (*See* ECF 151.)

*First*, LaMarco argues that in the parallel criminal proceeding, his counsel was found by the Appellate Court to have rendered ineffective assistance of counsel and that those records are under seal by the Second Circuit Court. (*Id.* at 16.) Defendant further argues that the Court should take into account that "Voluntariness and Knowing Waiver" and "Ineffective Assistance of Counsel" are applicable limitations to collateral estoppel. (*Id.* at 17.) *Second*, LaMarco argues that the CFTC failed to join James Walsh and Jack Lemmerman as indispensable parties pursuant to Fed. R. Civ. P. 19. (*Id.* at 18.) According to LaMarco, this is material because James Walsh was an officer of the trading pool and Jack Lemmerman solicited participants, and therefore the inclusion of them in the lawsuit would affect the CFTC's determination of Fines and Penalties. (*Id.*) *Third*, LaMarco argues that he was not required to register with the CFTC as a commodity pool because the CFTC admitted the Defendant had an exemption in 2014. (*Id.*) *Fourth*, LaMarco contends that because the Pool has been exempted from registration, the GAAP accounting method is left to the Pool Operator pursuant to 17 CFR 4.13, and therefore, the CFTC incorrectly used the NAV accounting in their declarations. (*Id.*) LaMarco asserts that the CFTC purposefully misapplied the NAV accounting for a validly exempt commodity pool as a means of misrepresenting and claiming the statements prior to February 2013 were false. (*Id.*)

20

*Fifth*, LaMarco argues that the CFTC has withheld evidentiary material in violation of the Brady Rule. (*Id.* at 1.) Specifically, LaMarco argues that the CFTC has withheld Broker Statements from 2011 that prove that trading did take place on behalf of the participants and was profitable, which run counter to the CFTC's assertions that LaMarco did not perform any trading on behalf of the pool participants. (*Id.* at 5.) *Sixth*, LaMarco argues that the CFTC confused restitution for actual trading losses and the $862,600 is the amount of Restitution (that was part of the Plea) not trading losses. (*Id.* at 21.) According to LaMarco, trading losses were never determined in the associated criminal case, nor losses related or not related to the relevant conduct and the CFTC omitted the 2011 Broker Deposit Statements in an effort to support the CFTC's false allegations. (*Id.* at 21.) Furthermore, LaMarco argues that the CFTC's restitution calculation should be lower because at the Resentencing and Release hearing of August 9, 2019, he accepted a morally higher restitution amount than the "legal" amount. (*Id.* at 24.) LaMarco asserts that the CFTC's push for higher restitution award prejudices him and "opens the door as to why any individual going forward or reviewing this case would accept moral responsibility if it would result in higher penalties in an after the fact matter." (*Id.* at 24.)

### C.  Plaintiff's Reply in Support

In its Reply, the CFTC argues that LaMarco fails to offer any evidence in support of his version of events but instead offers only conclusory allegations, denials, and falsehoods in response to the CFTC Statement of Facts ECF No. 150-2 ¶¶ 18-27, 29-33. (ECF No. 152 at 6-7.) *First*, the CFTC asserts that although LaMarco denies soliciting participants, he admits in his response to paragraph 24 of the CFTC SOFs that he provided pool participants with a GDLogix "Memorandum of Offering"—a solicitation document created and disseminated by him which falsely indicated that participants' funds would be placed in a commodity pool. (*Id.* at 7.) *Second*,

the CFTC argues that at the time of the GDLogix Memorandum of Offering dated March 2013, the combined value of LaMarco's two personal trading accounts at Gain Capital was only $404,278—nowhere near LaMarco's fabricated Pool net asset value of over $1.34 million as falsely reported in the GDLogix Memorandum of Offering performance table. (*Id.*) *Third*, the CFTC asserts that although LaMarco claims that the 2011 Broker Statements conclusively demonstrate there was not misappropriation of participants' funds, they accurately demonstrate that the trading accounts were in LaMarco's personal name and all trading was performed in those personal accounts, not the commodity pool's accounts. (*Id.* at 8.) Therefore, the CFTC maintains LaMarco misappropriated the participants' funds he traded in his own personal trading accounts in violation of 7 U.S.C. §§ 6b and 6*o*, and his claim that "[a]ll trading was on behalf of the pool participants" is patently false. (*Id.* at 8.)

The CFTC further argues that LaMarco's arguments regarding alleged *Brady* violations are meritless because the constitutional protections *Brady* affords apply to criminal defendants, not civil litigants and therefore it is inapplicable in this suit. (*Id.* at 8.) The CFTC also asserts that Plaintiff did not withhold documents from LaMarco, and there is no evidence that the documents he identifies are exculpatory. (*Id.* at 9.) According to the CFTC, even if the Court imports *Brady* obligations into this civil enforcement case, LaMarco's arguments are unavailing because the Government need not disclose materials or information that a defendant has in his own possession long before trial. (*Id.*) LaMarco himself had his own annual and monthly Broker Statements and the particular April 14, 2016, email he claims that the CFTC withheld. (*Id.*) The CFTC argues that LaMarco also fails to explain how the Broker Statements and the particular April 16, 2016, email are exculpatory because although he claims that Plaintiff "misrepresent[ed] (not counting) the total amount of deposits made into the Brokerage accounts while counting all deposits by the

participants," he does not explain how additional deposits into his personal trading accounts— not the Pool's trading accounts—exculpate him. (*Id.* at 10.) In fact, the CFTC asserts that the Broker Statements bearing his name show that he misappropriated participants' funds to trade in his personal trading accounts and did not conduct any trading for, or on behalf of, the commodity pool in violation of 7 U.S.C. §§ 6b(a)(2)(A)-(C) and 6*o*(1). (*Id.* at 10.) As for the April 16, 2016, email, the CFTC contends LaMarco claims that it shows pool participant James Walsh was appointed as corporate secretary of the trading pool, but he does not explain how this is material evidence and favorable to him even assuming that this is in fact true. (*Id.*)

The CFTC further asserts that LaMarco's argument that collateral estoppel does not apply because he was provided ineffective legal counsel is unsupported because this Court has already determined that:

> The issue of whether Defendants engaged in fraudulent solicitation in a scheme to defraud by making material misrepresentations to investors via false monthly statements was actually litigated and decided when LaMarco pleaded guilty in 2016. Such issues were necessary and critical to the criminal guilty plea, and LaMarco presumably had the full and fair opportunity to litigate those facts and issues in the prior proceeding. Thus, LaMarco is estopped from denying that he engaged in the solicitation of funds and made misrepresentations to investors by emailing them false month statements.

(ECF No. 119), *adopted in full* (E.D.N.Y. Mar. 14, 2023). The CFTC argues that the facts and issues involving LaMarco's violations of the CEA's anti-fraud provisions satisfy the Second Circuit's four-part collateral estoppel test barring him from relitigating his fraudulent solicitation and misrepresentations and that the cases LaMarco cites are clearly inapposite because they do not address the circumstances at issue here. (ECF No. 152 at 11.)

With respect to LaMarco's affirmative defense asserting that Plaintiff failed to join two pool participants as alleged indispensable parties, this argument fails because the parties have no

23

relevance to LaMarco's liability for fraud under the CEA. (*Id.*) The presence of the two pool participants identified by LaMarco has no bearing on the outcome of the Court's determination of LaMarco's liability and the relief sought by Plaintiff. (*Id.*) Additionally, the CFTC maintains LaMarco has made no showing that the two pool participants committed any wrongdoing, and such a determination is not required to ascertain LaMarco's liability for his fraudulent conduct as alleged by Plaintiff and the statutory basis for the Court to impose a permanent injunction, restitution, and CMP as requested by Plaintiff. (*Id.* at 12-13.)

*Finally*, with respect to the CFTC's requested relief, the CFTC further argues that the restitution for pool participants' losses and the CMP of triple the money LaMarco gained from pool participants is appropriate. (*Id.* at 13-15.) *First*, according to the CFTC, LaMarco fails to provide any support or relevant evidence to support his assertion that: (i) he deposited an additional $79,601.32 into his personal trading accounts, (ii) he put in $335,428.56 out of his own pocket for Redemption and Additional deposits, and (iii) he accepted a "morally higher" restitution amount than the "legal" amount at his criminal resentencing hearing. (*Id.* at 13.) Even assuming that LaMarco's claims are accurate, the CFTC argues that LaMarco fails to explain how any of them eliminate or reduce the restitution amount owed to pool participants pursuant to 7 U.S.C. § 13a-1(d)(3)(A). (*Id.*) The requested amount of $862,600 in restitution requested by Plaintiff is equal to pool participants' net losses, which is comprised of the total funds LaMarco solicited ($1,492,965) minus the funds he diverted from some participants and passed to other participants in the manner of a "Ponzi" scheme ($630,050). (*Id.*) Plaintiff has presented sufficient evidence to support its requests for restitution and CMP, including establishing that LaMarco received $1,492,650 in pool participant deposits in connection with his violations of the Act. (*Id.*) Second, according to the CFTC, the requested CMP of $2,587,800 against LaMarco, which is equal to triple his monetary

gain of $862,600, is appropriate given the gravity of his fraud over a multi-year period and is necessary to deter him from future violations of the Act. (*Id.* at 15.) The CFTC additionally maintains LaMarco is responsible for any uncertainty about the pool participant deposits he received for the purported purpose of commodity pool trading and should not benefit from the uncertainty he created. (*Id.* at 14.)

**DISCUSSION**

## I.    **Standard on a Motion for Summary Judgment**

In order to obtain summary judgment, the movant must demonstrate there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden is on the movant to demonstrate the absence of a genuine issue of material fact, which can be met by pointing to a lack of evidence supporting the nonmovant's claim. *Celotex Corp. v. Catrett¸* 477 U.S. 317, 323, 325 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movant meets its initial burden, the burden shifts and the nonmovant may defeat the motion only by adducing evidence of specific facts that raise a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York¸* 316 F.3d 93, 100 (2d Cir. 2002).

"The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts." *Sosa v. New York City Dep't of Educ.*, 406 F. Supp. 3d 266, 268 (E.D.N.Y. 2019) (internal citations omitted). The role of the court at the summary judgment stage is not to *resolve* disputed issues of fact, but merely undertake an analysis to *identify* whether

triable issue of fact exist. *See Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021). That is, the court's function is "issue-finding," not "issue-resolution." *Carolina Cas. Ins. Co. v. Cap. Trucking Inc.*, 523 F. Supp.3d 661, 668 (S.D.N.Y. 2021) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship* 22 F.3d 1219, 1224 (2d. Cir. 1994)). *Au fond*, the court's role is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (citing *Anderson*, 477 U.S. at 248 and *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)).

Viewing the facts presented here through the lens in the light most favorable to LaMarco, the undersigned finds: (i) LaMarco is collaterally estopped from re-litigating the factual issues concerning his fraudulent activities in the instant case in light of his previous criminal conviction; (ii) LaMarco committed fraud by making material misrepresentations and omissions and misappropriating participants' funds in violation of 7 U.S.C. § 6b(a)(2)(A)-(C); and (iii) LaMarco committed fraud as a CPO in violation of 7 U.S.C. § 6*o*(1); and, therefore, respectfully recommends Plaintiff's Motion for Summary Judgment be granted as to Counts I and II, respectively. Each is considered below.

## II.    <u>Collateral Estoppel</u>

"[C]ollateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). "The doctrine of collateral estoppel may apply when there is an identity of issues and the party to be precluded from relitigating an issue had a full and fair opportunity to contest the prior determination." *Olsson v. MacDonald*, 792 N.Y.S.2d 250, 251

(N.Y. App. Div. 3d Dep't 2005). "A court may conclude that the doctrine of collateral estoppel applies to a claim at the summary judgment stage." *White v. Pro. Claims Bureau, Inc*., 284 F. Supp. 3d 351, 358–59 (E.D.N.Y. 2018) (citing *Swiatkowski v. Citibank*, 745 F.Supp.2d 150, 168 (E.D.N.Y. 2010), *aff'd*, 446 Fed.Appx. 360 (2d Cir. 2011); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) ("Collateral estoppel, like the related doctrine of *res judicata*, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.").

"It is well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)); *see also SEC v. Mattera*, No. 11 civ. 8323 (PKC), 2013 WL 6485949, at *7 (S.D.N.Y. Dec. 9, 2013) ("For estoppel purposes, there is no difference between a conviction obtained by a plea, or by a guilty verdict."); *Olsson*, 792 N.Y.S.2d at 251 (internal citations omitted) ("A party in a civil action may be collaterally estopped from challenging liability when that party has pleaded guilty to criminal charges addressed to the same incident.").

Does a criminal conviction have collateral estoppel effect per se on a subsequent civil action? *Maybe*. A four-part test determines whether a federal criminal conviction has a collateral estoppel effect in a later federal civil action: (i) the issues in both proceedings must be identical, (ii) the issue in the prior proceeding must have been actually litigated and decided, (iii) there must have been a full and fair opportunity for litigation in the prior proceeding, and (iv) the issue previously litigated must have been necessary to support a valid and final judgment on the merits. *See Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986). "The party seeking the benefit

of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985).

*As to the first factor*, in the instant case, Plaintiff asserts claims for violations of §§ 6*o*(1) and 6(b)(a)(2)(A)-(C) of the CEA. The criminal charges LaMarco faced were made pursuant to § 13(a)(2) of the CEA, which imposes criminal liability for a violation of §§ 6, 6(b), and 6*o*(1). *See* 7 U.S.C. 13(a)(2). Both the criminal case and the subsequent civil action involve the same issues of whether LaMarco engaged in solicitation and fraud. *See e.g.*, *CFTC v. Coats*, No. 3:11-cv-00023 (RJC), 2017 WL 4125300, at *2 (W.D.N.C. Sept. 18, 2017) (finding that defendant was collaterally estopped from relitigating the same issues in a related civil proceeding when defendant pleaded guilty to violating 7 U.S.C. § 6(b) and the civil action involved issues of fraudulent solicitation, misappropriation, and false statements violating the CEA); *Mattera*, 2013 WL 6485949, at *8-9 (finding defendant's prior criminal conviction estopped him from relitigating the same facts pertaining to civil claims under section 10(b) and Rule 10b-5).

Additionally, the facts alleged by the Government and already established in the criminal proceeding – *i.e.*, that LaMarco engaged in fraudulent solicitation in a scheme to defraud by making material misrepresentations to investors via false monthly statements – are identical to those alleged in the Complaint and on summary judgment in the instant case. *See e.g., Commodity Futures Trading Comm'n v. Int'l Foreign Currency, In*c., No. 03CV3577DLIARL, 2012 WL 13105801, at *2 (E.D.N.Y. Jan. 30, 2012) ("*Int'l Foreign Currency, Inc.*") (finding defendant was collaterally estopped from relitigating the underlying facts of his criminal fraud convictions as they

28

related to the allegations of fraudulent solicitation in the subsequent civil enforcement action against him because the facts alleged in the civil enforcement action were "identical" to the facts alleged in the Superseding Indictment, where both documents alleged that defendant: (i) "fraudulently solicited investors, through the telephone and through written marketing materials, to engage in speculative trading of foreign currency futures contracts[;]" (ii) despite defendant's representations, individual customer accounts were never created; and (iii) instead of trading funds on behalf of investors, defendant "used the investor funds for his own personal expenses."); *S.E.C. v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 394–96 (S.D.N.Y. 2010), *adhered to* (Sept. 30, 2010), *judgment entered*, No. 99 CIV. 11395, 2011 WL 497775 (S.D.N.Y. Feb. 10, 2011) ("*Credit Bancorp*") (holding the same where the Complaint, Original Indictment, and Superseding Indictment all alleged defendant "(i) made misrepresentations and omissions of material facts in connection with the offer and sale of securities; (ii) participated in the fraudulent offer and sale of the Credit Bancorp insured credit facility; (iii) made material misrepresentations to investors regarding the placement of securities in custodial accounts, that funds were used to pay earlier investors, and that funds were used for unauthorized personal and business expenditures; and (iv) represented that Credit Bancorp had conducted more than one billion dollars in transactions since 1991 and that Credit Bancorp made money through riskless arbitrage conducted by unnamed foreign financial institutions").

*With respect to the second and fourth factors,* LaMarco pled guilty and was convicted of both wire fraud and commodities fraud charges. *See* ECF No. 150-2 at ¶ 11. LaMarco's conviction and guilty plea conclusively established the facts alleged by the Government concerning the wire fraud and commodities fraud counts – including allegations of fraudulent solicitation, misappropriation, and false statements. *Id.* at ¶ 14. Indeed, the facts incorporated in the Plea

Agreement formed the basis for his criminal conviction and sentencing and so were critical and necessary to the criminal judgment. *See* ECF No. 150-4 at 17. To this end, as previously determined by the undersigned, "the issue of whether [LaMarco] engaged in fraudulent solicitation in a scheme to defraud by making material misrepresentations to investors via false monthly statements was actually litigated and decided when LaMarco pleaded guilty in 2016" and "[s]uch issues were necessary and critical to the criminal guilty plea." *See* ECF No. 119 at 22-23; *see also Int'l Foreign Currency, Inc.*, No. 03CV3577DLIARL, 2012 WL 13105801, at *3 (finding defendant's parallel criminal case was "actually litigated and decided" after the jury rendered a guilty verdict, and defendant was collaterally estopped from relitigating the underlying factual conclusions that the jury relied upon in convicting him of the fraud charges in the criminal case, as "[t]hese factual determinations were necessary for a final judgment in the criminal case because they were the basis upon which the jury found [defendant] guilty beyond a reasonable doubt.").

*As to the third factor*, LaMarco had a full and fair opportunity to litigate these issues and facts in the criminal proceeding, and he was represented by competent defense counsel throughout the proceeding. *See* ECF No. 150-4 at 17; ECF No. 119 at 23 (finding "LaMarco presumably had the full and fair opportunity to litigate those facts and issues in the prior proceeding"). LaMarco signed the Plea Agreement, which included the following statements: "I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily." *See* ECF No. 150-4 at 17. That LaMarco entered a guilty plea – rather than being found guilty by way of a verdict – does not diminish his opportunity to litigate the merits of the allegations in the criminal proceeding. *See Credit Bancorp*, 738 F. Supp. 2d at 395-96 ("It is of no moment whether the criminal defendant's conviction arises out of a plea allocution or a trial"); *SEC v. Roor,* 2004 WL 1933578 at *6–7, 2004 U.S. Dist. LEXIS 17416 at *22–23

(S.D.N.Y.2004) (granting summary judgment in a SEC enforcement action based on collateral estoppel following defendant's guilty plea); *SEC v. McCaskey,* 2001 WL 1029053 at *3, 2001 U.S. Dist. LEXIS 13571 at *9 (S.D.N.Y.2001) ("Whether established at plea allocution or at trial, all facts material to the conviction bind the criminal defendant in later civil litigation."); *Int'l Foreign Currency, Inc.*, No. 03CV3577DLIARL, 2012 WL 13105801, at *3 (defendant had a full and fair opportunity to litigate his claims during the criminal case where he was represented by competent defense counsel who "zealously represented" his interests throughout trial).

LaMarco "makes no attempt to dispute the [CFTC's] claim that he is collaterally estopped from relitigating the facts which underlie his criminal conviction. In a civil case, a defendant cannot controvert facts that were established in a previous criminal conviction based on the same facts." *Id*. at 394; *see also Emich Motors Corp. v. Gen. Motors Corp.,* 340 U.S. 558, 568–69 (1951) (internal quotations and citations omitted)) ("It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding" if the issues in the civil litigation "were distinctly put in issue and directly determined in the criminal prosecution."); *Credit Bancorp*, 738 F. Supp. 2d at 394 (collecting cases) ("When a criminal court finds against a party in favor of the United States, the facts upon which that conviction was based are firmly set as conclusive and may not be denied.").

Accordingly, because LaMarco "has provided no specific evidentiary basis to controvert the [CFTC's] facts[,]" the "facts are established, there is no genuine issue of material fact, and [LaMarco] is collaterally estopped from relitigating these issues" on summary judgment. *Id*. at 395-96 (collecting cases) ("Courts regularly find that, where the criminal action supersedes the resolution of [a civil] enforcement action, a defendant is collaterally estopped from relitigating issues in the civil forum."); *see* ECF No. 119 at 23 (holding "LaMarco is estopped from denying

that he engaged in the solicitation of funds and made misrepresentations to investors by emailing them false monthly statements.").

### III.   <u>Count I – Violation of 7 U.S.C. § 6b(a)(2)(A)-(C)</u>

The CFTC asserts LaMarco defrauded investors in violation of Section 7 U.S.C. § 6b(a)(2)(A)-(C) of the CEA. Pursuant to Section 6b(a)(2)(A)-(C) of the CEA, it is unlawful:

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market— (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract[.]

*See* 7 U.S.C.A. § 6b.

To show LaMarco violated 7 U.S.C. §§ 6b(a)(2)(A)-(C) of the CEA, the CFTC must prove LaMarco: "(1) made misrepresentations or factual omissions; (2) that were material to the investor's decision to invest; and (3) acted with scienter." *Commodity Futures Trading Comm'n v. Highland Stone Capital Mgmt.*, L.L.C., No. 11-cv-5209, 2013 WL 4647191, at *15 (S.D.N.Y. Aug. 29, 2013); *see also Commodity Futures Trading Comm'n v. Wright*, No. 17-cv- 4722, 2018 WL 6437055, at *2 (S.D.N.Y. Dec. 7, 2018).

"A statement is material 'if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision.'" *Commodity Futures Trading Comm'n v. Friedrichsen*, No. 18-cv-1830, 2018 WL 7253430, at *3 (S.D.N.Y. Nov. 26, 2018) (quoting *Commodity Futures Trading Comm'n v. AVCO Fin. Corp.*, 28 F. Supp. 2d 104, 115 (S.D.N.Y. 1998)); *see also CFTC v. Int'l Fin. Servs. (New York), Inc.*, 323 F. Supp. 2d 482, 500-01 (S.D.N.Y. 2004) (statements are material "if there is a substantial likelihood that a reasonable investor would

consider the information in making a decision to invest," and misrepresentations "concerning profit and risk go to the heart of a customer's investment decision and are therefore material as a matter of law."). "Scienter is a mental state embracing an intent to deceive, manipulate, or defraud, and may be shown by proof of recklessness." *U.S. Commodity Futures Trading Comm'n v. LaMarco,* No. 217CV04087 (ADS)(AKT), 2019 WL 4247632, at *3 (E.D.N.Y. Sept. 5, 2019); *see also Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (internal quotation marks omitted) (noting that scienter can be shown either by "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious behavior or recklessness."); *CFTC v. Highland Stone Capital Management*, L.L.C., 2013 WL 4647191, at *15 (S.D.N.Y. 2013) (The scienter requirement necessitates a showing that the defendant had "intent to deceive, manipulate, or defraud," and may be satisfied by showing the defendant had actual knowledge that the material statements they made were false, or that they were reckless in failing to discover their falsity).

*First*, the undersigned finds the CFTC sufficiently demonstrated LaMarco made material misrepresentations and/or factual omissions to investors. The CFTC asserts – and it was established by LaMarco's criminal conviction – that LaMarco knowingly made material representations to existing and prospective pool participants by misrepresenting that: (i) the Commodity Pool had been continuously profitable, (ii) the fabricated data sent to pool participants accurately represented the Pool's performance, and (iii) LaMarco was an experienced and profitable forex trader with a successful track record. *See* ECF No. 150-4 at 19. It was additionally found LaMarco failed to disclose material facts to participants, including that he misappropriated their funds for personal use, and conducted no trading on their behalf. *See id; see also Int'l Foreign Currency, Inc.,* No. 03CV3577(DLI)(ARL), 2012 WL 13105801, at *4 (holding defendant

violated § 6b where defendants was previously found guilty of knowingly defrauding investors); *Commodity Futures Trading Comm'n v. Emerald Worldwide Holdings, Inc.,* No. CV03–8339AHM, 2005 WL 1130588, at *7 (C.D. Cal. Apr. 19, 2005) ("Soliciting or obtaining funds from investors for trading, then failing to trade the funds while using them for personal and business expenses, is misappropriation."); *see also U.S. Commodity Futures Trading Comm'n v. Driver*, 877 F. Supp. 2d 968, 978 (C.D. Cal. 2012), *aff'd sub nom. Commodity Futures Trading Comm'n v. Driver*, 585 F. App'x 366 (9th Cir. 2014) ("*Driver*") (internal citations omitted) (noting that "[m]isappropriation or diversion of funds entrusted to one for trading purposes is willful and blatant fraudulent activity that clearly violates the [CEA]" and holding Defendants "misappropriated more than $10 million from the pool to pay for expenses such as the payments to withdrawing investors, rent on [the individual defendant's] residence, and other personal expenses."); ECF No. 119 at 32 (internal citations omitted) (cleaned up) ("Misappropriation of the funds by using pool participants' funds to pay personal expenses,  constitutes a violation of 7 U.S.C. § 6b. And, delivering, or causing to be delivered false account statements, violates 7 U.S.C. § 6b(a)(2)(B).").

Misrepresentations regarding the profitability of the Pool and LaMarco's past success as a forex investor are factors that a "reasonable investor" would consider in making an investment decision. *See Driver*, 877 F. Supp. 2d at 977 ("Misrepresentations of profit and risk are material."); *see also Commodity Futures Trading Comm'n v. Int'l Fin. Servs. (New York), Inc.*, 323 F. Supp. 2d 482, 499–500 (S.D.N.Y. 2004) (holding defendants violated § 6b because they "lied to clients about the status of their accounts, issued false or misleading account statements, and grossly misrepresented the risks of foreign currency futures trading, particularly in view of the undisclosed facts that such trades would be entered into by poorly trained [independent contractors] with little

or no relevant experience"); *Commodity Futures Trading Comm'n v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 (D. Md. 2000), *aff'd in part, vacated in part sub nom. Commodity Futures Trading Comm'n. v. Baragosh*, 278 F.3d 319 (4th Cir. 2002) (finding defendants violated§ 6b where "[t]he uncontested record establishe[d] that [defendants] knew that their profit and risk claims were false, knew that they were misrepresenting the qualifications of their traders, knew that the account statements issued to customers and traders falsely represented that [their company] was purchasing foreign currency contracts, and knew that they were engaging in misappropriation of funds[,]" and yet they "continued to recruit traders and customers, urging them to invest in [the company's] foreign exchange currency contracts and continued to claim that they could earn substantial profits"); *Driver*, 877 F. Supp. 2d at 978 (investor made materially false and misleading statements or omissions of facts to pool participants by falsely claiming he had been successfully trading commodity futures when in fact his trading was unsuccessful).

That investors may have a signed a "Risk Disclosure" Statement is no safe harbor for LaMarco, nor does it absolve LaMarco of liability under § 6b. *See e.g., Int'l Fin. Servs. (New York), Inc.*, 323 F. Supp. 2d at 501–02 (emphasis in original) ("Even if customers read, signed, and understood the risk disclosure and customer account statements, those documents do not disclose the *actual* material facts: that [defendants] adopted trading practices deliberately designed to make clients lose their money, while maximizing commissions for [their company]. In short, the issue is not of an undisclosed risk but of an undisclosed virtual certainty of catastrophic losses.").

*Second,* LaMarco acted with scienter because he had personal knowledge of the amount of funds accepted from pool participants, the disposition of those funds, and the profitability of trades purportedly effected on behalf of pool participants. *See* ECF No. 150-4 at 20-21. Ultimately, it is undisputed that LaMarco owned and controlled the trading in the forex accounts. *See id*. When

LaMarco represented to pool participants that the Pool had achieved high rates of return and profits, as well as when he issued fabricated statements showing fictitious returns, he knew those representations were false. *Id.* at 21; *see also* ECF No. 119 at 32 ("LaMarco, on behalf of GDLogix, acted with scienter since he had personal knowledge of the actual profitability of the trades, and status of the pool participants' funds"); *see e.g.*, *Driver*, 877 F. Supp. 2d at 978 (holding the CFTC "presented ample evidence" Driver's "misrepresentations were made with scienter[,]" where "[t]he undisputed facts show[ed]" Driver: (i) "made materially false and misleading statements or omissions of facts to pool participants[,]" (ii) "had control over the bank accounts where pool funds were deposited and controlled the futures trading accounts[,]" (iii) admitted that he received statements from the trading accounts, and (iv) "sent statements depicting profits in the pool, [ knowing] those statements were false, or at the very least recklessly distributed those statements without regard for the truth of the statements."); *see also Int'l Fin. Servs. (New York), Inc.*, 323 F. Supp. 2d at 502–03 (holding defendants acted with scienter under the CEA where *"*[t]he evidence show[ed] defendants recruited largely inexperienced independent contractors ("ICs"), who were encouraged to solicit clients principally from poor immigrant communities that shared the ICs' ethnicities[,] and their "clients relied on the [defendants'] written and oral misrepresentations about its operations in deciding to open an account" and noting that  defendants "at best recklessly, if not deliberately, lost the overwhelming majority of the clients' funds by engaging in derelict trading practices designed to enrich [themselves] and generate commissions"); *Commodity Futures Trading Comm'n v. Wright,* No. 17-cv- 4722, 2018 WL 6437055, at *3 (S.D.N.Y. Dec. 7, 2018) ("*Wright*") ("Because Wright was the CEO and sole authorized signatory of WTCG's bank and forex trading accounts and engaged in account transactions in furtherance of his duties as WTCG's agent, WTCG knew or should have known that pool funds were being misappropriated

and were not used for forex trading."). Accordingly, the undersigned finds LaMarco defrauded

investors in violation of Section 7 U.S.C. § 6b(a)(2)(A)-(C) of the CEA.

## IV.   Count II – Violation of 7 U.S.C. § 6*o*(1)

The CFTC additionally claims that LaMarco violated 7 U.S.C. § 6*o*(1) of the CEA because

he engaged in fraudulent conduct while acting as an AP of CPO GDLogix. § 6*o*(1) makes it

"unlawful for a commodity trading advisor, associated person of a commodity trading advisor,

commodity pool operator, or associated person of a commodity pool operator, by use of the mails

or any means or instrumentality of interstate commerce, directly or indirectly[:]"

> (A) to employ any device, scheme, or artifice to defraud any client or participant or
> prospective client or participant; or
>
> (B) to engage in any transaction, practice, or course of business which operates as a fraud
> or deceit upon any client or participant or prospective client or participant.

7 U.S.C. § 6*o*(1).[7] The elements required to establishing a fraud claim under Section 6*o*(1) are

"essentially the same" as for a fraud claim under Section 6b(a)(2)(A)-(C). *See Schwartz et. al v.*

*O'Grady*, No. 86-cv-4243, 1990 WL 156274, at *16 (S.D.N.Y. Oct. 12, 1990); *Commodity Futures*

*Trading Comm'n v. All City Investments, LLC*, No. 16-cv-7372, 2018 WL 2465377, at *2

(S.D.N.Y. June 1, 2018). "The same elements of fraud applicable to violations of [S]ection

[6](b)(a)(2)(A)-(C) of the [CEA] . . . must be established for this claim, plus an additional

element—that the violator acted as a CPO"— or an AP of a CPO. *Wright*, No. 17-cv- 4722, 2018

WL 6437055, at *3 (citing *Commodity Futures Trading Comm'n v. iGlobal Strategic Mgmt., LLC*,

No. 12-cv-6574, 2012 WL 6930308, at *5 (S.D.N.Y. Nov. 19, 2012)); *see also* ECF No. 119 at 32

---

[7] 7 U.S.C. § 6*o*(1) "broadly prohibits fraudulent conduct" by a CPO and "applies to all . . . CPOs whether registered, required to be registered, or exempted from registration." *See CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1107-1108 (C.D. Cal. 2003); *see also CFTC v. Vartuli*, 228 F.3d 94, 103 (2d Cir. 2000) (finding unregistered commodity trading advisor is also liable under 7 U.S.C. § 6*o*).

(noting "the conduct that violates 7 U.S.C. § 6b also violates 7 U.S.C. § 6*o*(1).")." The CEA defines a CPO, in relevant part, as any person "engaged in a business that is of the nature of a commodity pool . . . who, in connection therewith, solicits, accepts, or receives from others, funds . . . for the purpose of trading in commodity interests." 7 U.S.C. § 1a(11). 17 C.F.R. § 1.3 (2023) further defines an AP of a CPO as any person who is associated with "[a] [CPO] as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged."

Here, by soliciting funds on behalf of the CPO GDLogix, LaMarco acted as an AP of the CPO as defined in 7 U.S.C. § 1a(11) and 17 C.F.R. § 1.3. *See U.S. Commodity Futures Trading Comm'n v. LaMarco*, No. 217CV04087ADSAKT, 2019 WL 4247632, at *5 (E.D.N.Y. Sept. 5, 2019) (finding "GDLogix acted as a CPO because the object of the fraudulent conduct was to solicit and accept funds from others for the purpose of trading in commodity interests" and "LaMarco also acted [as an AP] of GDLogix[,]" as he "acted as an officer or agent of GDLogix in a capacity that involved soliciting funds, securities, or property for participation in a commodity pool."). LaMarco admitted in his guilty plea to committing commodities fraud and admitted in his allocution that he "knowingly and willfully, by use of electronic communications to parties both within New York State and outside of New York State, directly and indirectly employed devices, schemes, and artifices to defraud investors engaged in transactions, practices in courses of business which operated as a fraud, and deceit upon investors by sending monthly statements to investors, falsely reporting the performance of their investments in the commodity pool." *See* ECF No. 150-4 at 22-23.

The same fraudulent conduct that constitutes violations of 7 U.S.C. § 6b described above (*i.e.*, Defendant LaMarco's misrepresentations and omissions to investors) also constitutes violations of 7 U.S.C. § 6*o*(1), *see supra*, Section III. *See LaMarco*, No. 217CV04087ADSAKT, 2019 WL 4247632, at *5 ("The Court explained in the previous section why the conduct detailed in the Complaint stated a claim for fraud under Sections [6](b)(a)(2)(A)-(C). These facts also suffice to plead that [LaMarco acted as an AP of GDLogix] because the object of [his] fraudulent conduct was to solicit and accept funds from others for the purpose of trading in commodity interests" on behalf of GDLogix); *see also Commodity Futures Trading Comm'n v. Friedrichsen*, No. 18-CV-1830 (GHW), 2018 WL 7253430, at *4 (S.D.N.Y. Nov. 26, 2018) ("As the Complaint adequately states a claim against Defendant for violating 7 U.S.C. § 6b[,] so too does it adequately state a claim against Defendant for violating Section [6]*o*(1) of the Act, 7 U.S.C. § 6*o*(1)."); *Driver*, 877 F. Supp. 2d at 978 ("The undisputed facts reveal that Defendants acted as CPOs during the Relevant Period. Axcess Fund was registered as a CPO in September 2008, and Driver was its only associated person. Therefore, these Defendants' misrepresentations and omissions of material facts and Driver's misappropriation of pool funds . . .violated not only section [6]b of the Act, but also section [6]*o*(1) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B)"); *see also Commodity Futures Trading Comm'n ex rel. Kelley v. Skorupskas,* 605 F.Supp. 923, 932 (E.D.Mich.1985) (a violation of section 6b of the CEA also violated section 6*o*). Therefore, the undersigned finds LaMarco additionally violated 7 U.S.C. § 6*o*(1) because he engaged in fraudulent conduct while acting as an AP of CPO GDLogix.

## CONCLUSION

For the reasons stated herein, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment on Counts I and II be **GRANTED**.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on Counsel for Plaintiff. Counsel for Plaintiff is directed to serve copies of this Report and Recommendation upon *Pro Se* Defendant and file proof of service on ECF within two (2) days of the posting of this Report and Recommendation. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  July 28, 2024

RESPECTFULLY RECOMMENDED,

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge
